08-1037-cv
*Myers v. Hertz Corp.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2008

Argued: August 4, 2009                    Decided: October 27, 2010

Docket No. 08-1037-cv

---

JENNIFER MYERS,

*Plaintiff-Appellant*,

-v.-

THE HERTZ CORPORATION,

*Defendant-Appellee*.

---

Before: POOLER, HALL, and LIVINGSTON, *Circuit Judges*.

Plaintiff-Appellant Jennifer Myers brought this action in 2002 asserting claims against Defendant-Appellee The Hertz Corp. ("Hertz") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and various provisions of New York state law. Myers appeals from a July 24, 2007 decision of the United States District Court for the Eastern District of New York (Cogan, *J.*) denying her motion pursuant to Federal Rule of Civil Procedure 23 to certify a class of station managers at Hertz facilities in New York based on Hertz's purported violations of New York Labor Law § 191 with respect to the class. We affirm the district court's denial of class certification. We additionally conclude that we will not exercise pendent appellate jurisdiction to

review the earlier order of the district court (Hurley, *J.*) that denied Myers's motion, pursuant to 29 U.S.C. § 216(b), to certify an opt-in "collective action" on her FLSA claim. Whether or not this earlier ruling was in error, however, we conclude finally that the district court is not bound by a prior denial of "collective action certification" and may consider a renewed motion, brought by the plaintiffs, to send notice to potential opt-in participants in the action.

AFFIRMED.

---

ROBERT J. STEIN III , William M. Hensley, Adorno Yoss Alvarado & Smith, Santa Ana, California; Stephen T. Rodd, Stephanie Amin-Giwner, Orin Kurtz, Abbey Spanier Rodd & Abrams, LLP, New York, New York, *for Plaintiff-Appellant Jennifer Myers*.

FRANK B. SHUSTER, Constangy, Brooks & Smith, LLC, Atlanta, Georgia; Kenneth W. DiGia, Epstein Becker & Green, P.C., New York, New York, *for Defendant-Appellee The Hertz Corporation*.

---

DEBRA ANN LIVINGSTON, *Circuit Judge*:

In this procedurally convoluted case, plaintiffs seek overtime wages they contend they were unlawfully denied by their employer. The plaintiffs apparently initially intended this case to be a nationwide "collective action" under § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), through which employees seeking to recover under FLSA's substantive provisions may assert claims on behalf of other "similarly situated" employees. Unlike in traditional "class actions" maintainable pursuant to Federal Rule of Civil Procedure 23, plaintiffs in FLSA representative actions must affirmatively "opt in" to be part of the class and to be bound by any judgment. *See, e.g.*, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) (per curiam); 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:16 (5th ed. 2009). To this end plaintiffs

2

requested from the district court an order allowing them to send court-facilitated "notice" of their lawsuit to potential plaintiffs to allow such persons to "opt in." When this request was denied, plaintiffs changed their strategy and sought certification of a Rule 23 class action on a New York state law claim for the "timely" payment of wages. This claim was, as we will explain, entirely derivative of plaintiffs' FLSA claim. The district court denied class certification and this appeal followed. We affirm, concluding that it was not an abuse of discretion for the district court to deny class certification. Although plaintiffs urge us to review the district court's earlier denial of their request to send notice to potential FLSA plaintiffs, we conclude that we lack appellate jurisdiction to consider the merits of this earlier ruling.

## I. Background

The background facts relevant to our disposition of this case are briefly stated and are undisputed except where noted. Beginning in 1998, Jennifer Myers was employed as a "Station Manager" at a car rental facility of The Hertz Corporation ("Hertz") at Long Island MacArthur Airport in Ronkonkoma, New York. Am. Compl. ¶¶ 4, 18. Myers's complaint alleges that her job as a station manager required her to work a significant number of overtime hours, but that Hertz has not paid its station managers the time-and-a-half wage for that overtime guaranteed by FLSA. *Id.* ¶¶ 19-23, 34. Instead, Hertz classifies station managers as "exempt" from FLSA's guarantees on the ground that station managers perform tasks characteristic of "executive" employees. *Id.* ¶ 24; *see also* 29 U.S.C. § 213(a)(1) (exempting from FLSA's minimum wage and maximum hour requirements those employees who work "in a bona fide executive . . . capacity" as defined by Labor Department regulations). Myers contends that this designation is incorrect: Hertz station managers do not, she asserts, have the authority to hire, fire, promote, or set the salaries of other Hertz

3

employees, and any tasks performed by station managers characteristic of "management" form only a small part of the overall duties of a station manager. Am. Compl. ¶¶ 26-28.

Hertz's policy on the exemption of certain of its employees from FLSA, known as "Policy 2-50," does not specifically list station managers as exempt from FLSA's guarantees. Instead it sets forth "guidelines [and] general criteria used by [Hertz] to determine an employee's status." Employees classified as "Executive Employees" under the Policy include those who spend 80% or more of their time managing a company subdivision, directing the work of other employees, performing tasks relating to their authority to make personnel decisions, and generally acting in a supervisory capacity and exercising discretion in their work. It appears that Hertz did not analyze the duties of individual station managers to determine whether managers at individual Hertz business locations were exempt, but rather determined that all such employees across Hertz facilities meet the Policy's criteria for exemption as "executives." According to Hertz, station managers fall within this category because their primary responsibilities are managerial, involving the supervision of the other workers at the locations, enforcement of Hertz policies, and management of the inventory, among other tasks. Myers does not contend that the terms of Policy 2-50 are inconsistent with applicable administrative regulations; instead, as mentioned earlier, Myers disputes Hertz's characterization of a station manager's duties. This appeal does not require us to resolve this dispute or the underlying merits of Myers's FLSA claim.

Myers's complaint asserts four causes of action: first, that Hertz violated FLSA § 7, 29 U.S.C. § 207, which requires employers to pay employees who work over forty hours per week "not less than one and one-half times the regular rate at which [the employees are] employed" for those overtime hours; second, that Hertz violated "NY Labor Law § 198," Am. Compl. ¶ 42, by

4

misclassifying Myers as "exempt" under FLSA and failing to pay her overtime wages; third, that

Hertz violated New York Labor Law § 191, which guarantees the timely payment of wages by

employers; and fourth, that Hertz violated New York Labor Law § 162, which requires employers

to allow their employees to take meal breaks.  Myers attempted to bring these claims on her own

behalf and on behalf of a class of "all current and former employees of Hertz who have worked in

the positions of 'Senior Station Manager,' 'Station Manager' or 'Station Manager-B' at any Hertz

location in the United States from August 1, 1999 through the date the Court orders notice to be sent

to putative class members."  *Id.* ¶ 6.  Myers sought recovery of her allegedly wrongfully withheld

overtime as well as liquidated damages, and she also sought to bring her FLSA claim as a so-called

"collective action."  *Id.* ¶¶ 1, 6, 34-37.  She invoked 29 U.S.C. § 216(b), which provides:

> Any employer who violates [FLSA's substantive provisions relating to minimum
> wages or maximum hours] shall be liable to the employee or employees affected in
> the amount of their unpaid [wages], and in an additional equal amount as liquidated
> damages. . . . An action to recover the liability prescribed [in the preceding sentence]
> may be maintained against any employer . . . in any Federal or State court of
> competent jurisdiction by any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing to become such a
> party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Using § 216(b)'s "consent" procedure, four additional plaintiffs opted in to

Myers's action in January 2003, each also a current or former station manager at MacArthur Airport.

This appeal follows four rulings of the district court.  First, in March 2005 the district court

(Denis J. Hurley, *District Judge*) denied Hertz's motion for summary judgment on plaintiffs' FLSA

claim, concluding that disputes regarding material facts — such as whether plaintiffs' salaries were

subject to reduction for violations of Hertz's attendance policy and how plaintiffs' duties should be

characterized — precluded summary judgment on that claim.  The court also allowed plaintiffs'

5

Labor Law § 191 claim to proceed, concluding that Hertz's failure to pay overtime at all, if proven to be unlawful, would also support a conclusion that it failed to pay plaintiffs' wages *on time* as required by § 191. The court dismissed plaintiffs' other two state law claims, concluding that plaintiffs' New York Labor Law § 198 claim, which plaintiffs characterized as a claim for attorneys' fees, was not supported by the plaintiffs' allegations, and that plaintiffs' § 162 claim failed because Labor Law § 162 does not provide a private right of action. The plaintiffs apparently did not attempt to amend their complaint to add additional state law claims following this ruling. In March 2006, after Hertz moved for reconsideration, the district court reversed its earlier conclusion that questions of fact existed regarding whether plaintiffs were "paid on a salary basis," one of the criteria of an "executive" employee set forth in Labor Department regulations. Instead, the court determined that plaintiffs' salaries were not "subject to deduction" and therefore that plaintiffs were "paid on a salary basis" as a matter of law. The court adhered to its previous determination, however, that questions of fact regarding plaintiffs' duties precluded summary judgment for Hertz.

While the summary judgment motions were pending, Myers sought leave to send notice to other potential opt-in plaintiffs "similarly situated" to herself in order to obtain their consent to participate in a "collective action" pursuant to FLSA § 216(b). Myers's motion covered all Hertz employees who had served in station manager positions from August 1, 1999 through the time notice would be sent. Hertz opposed the motion, contending that plaintiffs had failed to make a factual showing regarding the activities conducted by station managers at airports other than MacArthur, and that plaintiffs' allegations that Hertz had engaged in an "unlawful policy or scheme . . . to evade the FLSA" by "misclassifying" station managers as exempt were merely conclusory. Hertz further contended that plaintiffs could not show that other station managers were "similarly situated"

6

because FLSA's similarity analysis requires an individualized assessment of what each potential plaintiff did on the job. The district court agreed with this latter argument, and denied the plaintiffs' motion. *See Myers v. Hertz Corp.*, No. 02-CV-4325 (DRH) (MLO), slip op. at 10 (E.D.N.Y. May 18, 2006) (hereinafter "Collective Action Order"):

> [T]he Court finds that Plaintiffs' motion suffers from a fatal flaw that further discovery cannot cure: because liability as to each putative plaintiff depends upon whether that plaintiff was correctly classified as exempt pursuant to . . . Policy 2-50, any collective action would require the Court to make a fact-intensive inquiry into each potential plaintiff's employment situation. Thus, regardless of the possibility that other Station Managers are improperly being classified as exempt pursuant to . . . Policy 2-50, any determination as to their right to overtime would require a highly individualized analysis as to whether the duties they performed fell within that exemption.

*Id.* at 9.

Plaintiffs thereafter explored the possibility of having the district court certify the Collective Action Order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). By this time, the case had been reassigned to Judge Brian M. Cogan. Judge Cogan suggested in an August 2006 hearing that he would deny a certificate of appealability. Plaintiffs subsequently moved pursuant to Federal Rule of Civil Procedure 23 to certify a class of Hertz station managers employed in New York State from August 1, 1996, through the time of the motion. The proposed class was to be certified based on the New York Labor Law § 191 claim only. Plaintiffs' counsel indicated to the district court that the class certification motion would be used as a vehicle to get Judge Hurley's earlier rulings, and in particular the Collective Action Ruling, before this Court on an interlocutory basis if the district court were to deny the motion.

On July 24, 2007, Judge Cogan denied plaintiffs' motion for class certification. *See Myers v. Hertz Corp.*, No. 02 Civ. 4325 (BMC) (MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007). He

7

noted that, "[p]ursuant to the 'law of the case' doctrine," he "w[ould] not revisit" Judge Hurley's earlier decisions in the case, including the Collective Action Order. *Id.* at *2. He then concluded that the plaintiffs failed to satisfy Rule 23's commonality, typicality, and predominance requirements because the main issue to be decided in the case, whether each potential plaintiff was properly classified as "exempt" from FLSA's overtime guarantees, required, as Judge Hurley had found earlier in the Collective Action Order, a "fact-intensive inquiry into each potential plaintiff's employment status under the FLSA." *Id.* at *4 (internal quotation marks omitted). That plaintiffs' proposed class only encompassed New York station managers (rather than all managers nationwide, as in plaintiffs' earlier putative FLSA collective action) did not matter because "individualized proof" would still be needed to determine whether any particular plaintiff was wrongly classified and thus entitled to overtime pay. *Id.* The evidence plaintiffs proffered, consisting principally of the testimony of one Hertz representative, to demonstrate that all station managers performed the same tasks, was insufficient to show that liability issues could be proven in common among class members. *Id.* at *5. We granted plaintiffs' motion for leave to appeal the district court's denial of class certification pursuant to Rule 23(f).

## II. Procedural Posture

This case comes to us in an unusual position compared to ordinary wage and hour cases. We have five individual plaintiffs, Myers and the four who have opted in, who assert individual claims for overtime pay under FLSA and claims that Hertz violated New York Labor Law § 191. But this set of claims is unlike that asserted by most FLSA plaintiffs, who contend that *both* FLSA *and* a provision of state law *independently* guarantee them a minimum wage or overtime pay. Labor Law § 191 by its terms only involves the timeliness of wage payments, and does not appear to afford to

8

plaintiffs any substantive entitlement to a *particular* wage. *See* N.Y. Labor Law § 191(1)(d) ("A

clerical and other worker shall be paid the wages earned in accordance with the agreed terms of

employment, but not less frequently than semi-monthly, on regular pay days designated in advance

by the employer.").[1]

Thus the § 191 claim is entirely coextensive with, and derivative of, plaintiffs' FLSA claim.

The only reason Hertz is alleged to have violated § 191 is that it failed to pay plaintiffs the overtime

wages to which they claim to be entitled under FLSA. Myers's complaint confirms this: "By

wrongfully and deliberately not paying Plaintiff and the class members the overtime wages they

were entitled to under the FLSA and New York Labor Law, Hertz has violated New York Labor

Law § 191." Am. Compl. ¶ 47. (Although the complaint references "New York Labor Law" as a

source of plaintiffs' rights to overtime separate from FLSA, any substantive claim to wages under

New York state law has been dismissed from the case, so the plaintiffs at this point rely solely on

---

[1] We are somewhat doubtful therefore that § 191 is the appropriate vehicle to seek the overtime pay to which plaintiffs claim to be entitled. Section 191 guarantees plaintiffs only timely payment of "wages earned in accordance with the agreed terms of employment." N.Y. Labor Law § 191. Plaintiffs have never alleged that overtime payments were part of the "agreed terms" of their employment with Hertz. New York Labor Law appears to protect a substantive right to overtime under a different set of statutes and administrative regulations. *See generally Ballard v. Cmty. Home Care Referral Serv., Inc.*, 695 N.Y.S.2d 130, 131 (2d Dep't 1999). New York courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute; rather § 191 guarantees only that the wages the employer and employee have "agreed" upon be paid in a "timely" manner again according to the "terms of [the employee's] employment." *See, e.g.*, *Jara v. Strong Steel Door, Inc.*, No. 14643/05, 2008 WL 3823769, at *11-*12 (N.Y. Sup. Ct. Aug. 15, 2008) (dismissing § 191 claim seeking overtime payments as "redundant" of plaintiffs' overtime claim brought under Labor Law § 663; "[P]laintiffs' [claim] does not allege a frequency of payment violation . . . . [T]he gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive. To the extent that prevailing wages are sought to be recovered, Labor Law § 191 is an inappropriate vehicle for such recovery."). However, to the extent this "merits" issue is "unrelated to a Rule 23 requirement," we do not address it further. *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

9

FLSA as the source of their § 191 claim.) To prove their § 191 claim, moreover, plaintiffs will have to prove an underlying violation of FLSA and nothing more. As for damages on the § 191 claim, plaintiffs seek only those overtime wages to which they already claim to be entitled pursuant to FLSA. *Id.* ¶ 48. In summary, plaintiffs' state law claim is merely and nothing more than an alternative method of seeking redress for an underlying FLSA violation. Plaintiffs seek to bring this claim on behalf of a class of Hertz station managers in New York State.

In this context we must decide whether the district court abused its discretion in declining to certify a class on plaintiffs' § 191 claim. *See In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008). Plaintiffs contend that all of Rule 23's requirements for class treatment of the § 191 claim are satisfied and, in particular, that the district court erred in concluding that the proposed class action would not involve common questions of law or fact that would "predominate over any questions affecting only individual [class] members." Fed. R. Civ. P. 23(b)(3). Because Judge Cogan refused to reconsider the Collective Action Order in ruling on the class certification motion, Plaintiffs additionally contend that we must also review that order which, they say, formed the basis for the class certification ruling and which was also in error. Hertz creatively invokes a number of doctrines, from Article III's "case or controversy" requirement to supplemental jurisdiction, to argue that no § 191 class action can be certified in this unusual procedural posture. We conclude, however, that we need only address the traditional requirements of Rule 23 to decide plaintiffs' appeal.

### III. Class Certification

We apply an abuse of discretion standard "both [to] the lower court's ultimate determination on certification" of a class "as well as to its rulings that the individual Rule 23 requirements have

been met." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34 (2d Cir. 2009). While our review of the legal standards applied by the district court and the court's other legal conclusions is de novo, *see Salomon*, 544 F.3d at 480; *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006) ("*In re IPO*"), the district court's application of those standards to the facts of the case is again reviewed only for abuse of discretion, *see Salomon*, 544 F.3d at 480. This standard means that the district court "is empowered to make a decision — of *its* choosing — that falls within a range of permissible decisions," and we will only find "abuse" when the district court's decision "rests on an error of law . . . or a clearly erroneous factual finding, or . . . its decision . . . cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnote omitted). "Implicit" in this "deferential" standard when applied in the class action context "is a recognition of . . . the district court's inherent power to manage and control pending litigation." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007) (internal quotation marks omitted). The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008).

Rule 23 requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(a). Moreover, Rule 23(b)(3), which would govern the proposed class action here, requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only

11

individual members" and that class treatment would be superior to individual litigation. Fed. R. Civ. P. 23(b)(3). The "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The requirement's purpose is to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (alteration omitted) (quoting *Amchem*, 521 U.S. at 615). Therefore the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (noting that it is "the relationship between the common and individual issues" that the requirement examines (internal quotation marks omitted)).

We need only address the "predominance" requirement here, as we determine that the district court's conclusion that the evidence put forward by the plaintiffs was insufficient to carry their burden to establish by a preponderance that common questions would predominate over individual ones rested neither on an error of law nor a clear error of fact and was "within the range of permissible decisions." *Zervos*, 252 F.3d at 169. "Rule 23(b)(3) requires that the district court determine what questions of law or fact are common to the members of the class." *Cordes*, 502 F.3d at 106 (internal quotation marks and alteration omitted). In this case, plaintiffs contend that station managers worked overtime, that Hertz denied them overtime pay, and that they were legally entitled

12

to such payments. Hertz disputes only the third contention, arguing that any denial of overtime pay was legal because plaintiffs are "exempt" employees. The "questions of law or fact" that this case will ultimately require resolving, therefore, include 1) whether plaintiffs were denied overtime and 2) whether plaintiffs were *entitled* to overtime under FLSA. While the first is a simple factual matter and is not in dispute, the second is a complex, disputed issue, and its resolution turns on exemption, which in turn will require the district court to decide a number of subsidiary questions involving whether plaintiffs fall within the Labor Department's criteria for "employee[s] employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1).

Administrative regulations classify employees as "executive" if 1) they are "[c]ompensated on a salary basis"; 2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or sub-division thereof"; 3) they "customarily and regularly direct[] the work of two or more other employees"; and 4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a)(1)–(4).[2] The regulations further provide a non-exclusive list of characteristic "management" activities to which a court may look to determine whether an employee's "primary duty is management," *id.* § 541.100(a)(2). *See id.* § 541.102. The exemption question, therefore, is a mixed question of law and fact, *see Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 521 (2d Cir. 1998), involving a number of subsidiary questions, each of which may or may not be able to be proven in common with respect to all Hertz New York station managers. Significantly, the regulations make clear that these questions should be resolved by examining the

---

[2] To the extent the claims of some members of the class would require application of the regulations in effect prior to August 23, 2004, the analysis with respect to the prior version of the regulations is substantially similar.

13

employees' actual job characteristics and duties. The regulations require a court to "determine[]" the "exempt or nonexempt status of any particular employee . . . on the basis of whether the employee's salary and duties meet the requirement of the regulations" defining "executive employees." 29 C.F.R. § 541.2. To determine whether an employee's "primary duty" is management, *id.* § 541.100(a)(2), a court must analyze "all the facts in a particular case," looking to the "principal, main, major or most important duty that the employee performs," *id.* § 541.700(a) (defining "primary duty").

"[E]conomies of time, effort, and expense" in fully resolving each plaintiff's claim will only be served, and the predominance requirement satisfied, *Cordes*, 502 F.3d at 104, if the plaintiffs can show that "some" of the above questions can be answered with respect to the members of the class as a whole "through generalized proof" and that those common issues are "more substantial" than individual ones, *Moore*, 306 F.3d at 1252. Hertz contends that the exemption inquiry requires "an individualized and fact-intensive inquiry" into the job duties of each individual plaintiff to determine whether those duties qualified the individual station manager as an "executive" under the applicable regulations. Hertz Br. at 47. We do not understand Hertz to contend that exemption is an *inherently* individualized inquiry, such that class treatment will never be appropriate in exemption cases, and we note that district courts in this Circuit have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees. *See, e.g.*, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008). But these cases confirm that the exemption inquiry requires examination of the "dut[ies] that the employee" actually "performs," 29 C.F.R. § 541.700(a), and they involve evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria. *See Damassia*, 250 F.R.D. at 156-61

14

(certifying Rule 23 class action of overtime claims under New York Labor Law and concluding that plaintiffs satisfied the predominance requirement by, *inter alia*, demonstrating that the job duties of putative class members were "largely consistent" across the class and that individual differences in job tasks would not be of the "magnitude" to "cause individual issues to predominate," *id.* at 160). While such evidence will not necessarily be dispositive of the overall predominance inquiry, it will tend to show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class.

Plaintiffs do not contend that their own deposition testimony relating to their specific job duties is generalizable to station managers at other Hertz locations in New York. Nor, it appears, did plaintiffs ever submit any evidence to the district court relating to station managers at Hertz locations other than Long Island, despite having had opportunities to do so. Plaintiffs point to two categories of evidence showing that Hertz's liability can be proven in common: Hertz's decision to classify all station managers as exempt without an examination of each individual manager's duties; and the testimony of Hertz representatives which, plaintiffs claim, establishes that station managers' duties do not vary materially across Hertz locations. With respect to the first category, Hertz's blanket exemption policy, we agree with the Ninth Circuit that while such a policy suggests "the employer believes some degree of homogeneity exists among the employees," and is thus in a general way relevant to the inquiry here, the existence of a blanket exemption policy, standing alone, is not itself determinative of "the main concern in the predominance inquiry: the balance between individual and common issues." *Wells Fargo*, 571 F.3d at 957, 959. In possible contrast to a uniform corporate policy detailing employees' job duties, the fact of common exemption does not establish whether all plaintiffs were *actually* entitled to overtime pay or whether they were covered

15

by the applicable administrative regulations defining FLSA's exemptions. *See Wells Fargo*, 571 F.3d at 958 (holding that district court abused its discretion in certifying class of employees claiming wrongful exemption in reliance on a common exemption policy, to the virtual exclusion of other issues potentially requiring individualized proof); *see also Damassia*, 250 F.R.D. at 159-60 (noting common exemption policy's possible relevance but examining evidence regarding the actual duties of plaintiffs to find predominance). Again, the question of entitlement to overtime pay is answered by examining the employee's actual duties. 29 C.F.R. §§ 541.2; 541.700. Here, all we need decide is that the district court did not abuse its discretion in concluding that Hertz's common policy demonstrated little regarding whether the constituent issues that bear on Hertz's ultimate liability are provable in common.

An examination of the second category of evidence, the testimony of Hertz employees, confirms that the district court reasonably concluded that plaintiffs had not satisfied their burden to show that such substantial common issues are present here. Plaintiffs rely principally on the deposition of a single Hertz representative, Robert Ciccotto, who testified about the job duties of station managers, but this testimony provides, as the district court concluded, only mixed support for plaintiffs. Ciccotto, an operations manager who had worked at multiple Hertz locations nationwide, testified that each Hertz operation was "unique" and that there were "some variances" among the company's locations. Ciccotto Dep. at 107:6-108:5. He also testified that a station manager who transferred from one location to another might not necessarily be able, when he began work at the new location, to perform all his required duties without some training relating to the specific Hertz location. *Id.* at 112:12-113:6. While Ciccotto also stated generally that station managers at various locations have "similar responsibilities" and that their jobs are "more or less

the same," *id.* at 106:13-107:15, it was not unreasonable for the district court to conclude from Ciccotto's testimony as a whole that Hertz's liability might require "individual factual analysis" to resolve, given Ciccotto's reference to differences among Hertz locations and his suggestion that the "primary duties" of managers differ across locations. *See Myers*, 2007 WL 2126264, at \*6. Like Ciccotto, Irwin Pollack, a Hertz division vice-president for employee relations, also testified generally about the duties of station managers, stating that "most of [them] would be similar," Pollack Dep. at 35:10, but he did not elaborate. Because this testimony is quite general and largely inconclusive, we cannot say that Judge Cogan exceeded his allowable discretion in concluding that this evidence did not establish that liability could be proven in common. *See Myers*, 2007 WL 2126264, at \*5.

Plaintiffs respond that the district court committed legal error in ignoring "uncontested" questions in its predominance inquiry and by focusing only on Hertz's "affirmative defenses" — that plaintiffs were exempt from FLSA's guarantees — rather than on the common questions presented by plaintiffs' "case-in-chief." Pls.' Br. at 43. First, while it is true that district courts may not exclude conceded issues from a determination whether common issues will predominate overall, *see In re Nassau County Strip Search Cases*, 461 F.3d 219, 227-29 (2d Cir. 2006), the reason for this is that the predominance requirement requires a district court to consider "*all* factual or legal issues," *id.* at 227 (emphasis added), to determine whether the issues subject to generalized proof are more "substantial" than those subject to individual inquiry, *Moore*, 306 F.3d at 1252. The "conceded" issues in this case, such as whether station managers worked overtime, whether they were paid overtime, and whether Hertz classified them as exempt pursuant to a common policy, are clearly less substantial in the overall mix of issues this case presents when compared to the ultimate (contested)

17

question the district court would have to decide in any potential class action — whether plaintiffs were *legally entitled* to the overtime they were not paid.[3]

Second, it does not matter that exemption in this case may technically be termed an "affirmative defense." The "defense" is in reality the "mirror image" of plaintiffs' claim — plaintiffs claim they were legally entitled to overtime, and Hertz counters that they were not. *See* Allan Erbsen, *From "Predominance" to "Resolvability": A New Approach to Regulating Class Actions*, 58 Vand. L. Rev. 995, 1075 (2005) ("[M]ost 'defenses' are merely the mirror image of arguments necessary to prove liability."). Thus there is no reason the district court ought to have given the "defense" less weight in determining whether overall class certification would serve the goals of the predominance requirement. Moreover, while it is well established that the existence of a defense potentially implicating different class members differently does not *necessarily* defeat class certification, *see, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010), it is equally well established that courts must consider potential defenses in assessing the predominance requirement, *see, e.g.*, *id.*; *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008); *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001), *abrogated on other grounds by In re IPO*, 471 F.3d at 40; *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295-96 (1st Cir. 2000). While Hertz will ultimately bear the burden of proving the merits of its exemption argument, *see In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010), plaintiffs must

[3] This case is therefore poles apart from plaintiffs' primary authority, the *Strip Search Cases*, 461 F.3d 219. There, we concluded that it was an abuse of discretion for a district court to decline to find the predominance requirement satisfied when the defendants had conceded all "the major liability issues" and asserted an affirmative defense which, the defendants also conceded, would involve only "de minimis" individualized inquiry with respect to each plaintiff against whom the defense was asserted. *Id.* at 227-30.

18

at this stage show that more "substantial" aspects of this litigation will be susceptible to generalized proof for all class members than any individualized issues. On the evidence presented to the district court, they have manifestly failed to do this.

We therefore conclude that the district court did not abuse its discretion in declining to certify a class. We need not address Hertz's alternative argument that Judge Cogan abused his discretion in exercising supplemental jurisdiction "over [plaintiffs'] motion for class certification," Hertz Br. at 33, except to the following extent: Supplemental jurisdiction is about claims, not "motions." *See* 28 U.S.C. § 1367(a). The only supplemental jurisdiction question (arguably) presented by the class certification motion was whether the district court would take supplemental jurisdiction over the state law claims of the absent class members *if* it were to certify a class. Because the district court did not certify a state law class, this issue is moot.[4] *Cf. De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 303-04, 307-12 (3d Cir. 2003) (considering whether district court abused its discretion in exercising supplemental jurisdiction over state law opt-out class action claims *after* certifying *both* a FLSA collective action *and* the state law action). Hertz does not appear to challenge the district court's decision to exercise supplemental jurisdiction over the state law claims of the *named* individual plaintiffs, and even if it did, we are doubtful that this issue is before us on this appeal of the denial of class certification.

## IV. Pendent Appellate Jurisdiction

This brings us to the issue of whether we may review any issue in this case other than that

---

[4] We therefore need not decide whether, had the district court certified a class, the court would have abused its discretion by exercising jurisdiction over the § 191 claims of the class members. *See* 28 U.S.C. § 1367(c); *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 424-25 (D.C. Cir. 2006).

19

denial. This case is before us pursuant to Rule 23(f), which allows a court of appeals to "permit an appeal from an order granting or denying class-action certification under [Rule 23]." Fed. R. Civ. P. 23(f). The only decision over which we have appellate jurisdiction is, therefore, the district court's class certification decision, which we have affirmed. The plaintiffs urge us, however, to review the district court's earlier rulings in this case, on which, they contend, the class certification ruling was based. They particularly take issue with Judge Hurley's Collective Action Order, asserting a number of objections to that order and, in particular, that Judge Hurley abused his discretion in declining to certify a collective action on the basis of the evidence plaintiffs put forward demonstrating that Hertz station managers nationwide are "similarly situated" with respect to their job duties and Hertz's common exemption policy. 29 U.S.C. § 216(b). Plaintiffs also contend that Judge Hurley erred as a matter of law in concluding that the FLSA exemption inquiry was so inherently individualized that plaintiffs *could* not, even with further and broader discovery, establish that they were "similarly situated" to other potential plaintiffs.

Congress has, by statute, determined that the federal courts of appeals generally only have appellate jurisdiction over "final decisions" of the district courts. 28 U.S.C. § 1291; *Swint v. Chambers County Comm'n*, 514 U.S. 35, 45 (1995). Congress has also set forth a limited set of circumstances under which courts of appeals may take jurisdiction over "interlocutory" decisions of district courts, 28 U.S.C. § 1292(a), and has set forth a method to be used by district courts to "certify" and courts of appeals to accept for immediate appeal interlocutory decisions that do not fall within § 1292(a)'s enumerated categories, *id.* § 1292(b). The Supreme Court additionally may, through its rulemaking powers, add to the list of interlocutory decisions of district courts that are immediately appealable to the courts of appeals. *Swint*, 514 U.S. at 48. Finally, federal statutes or

20

rules, such as Rule 23(f), may provide for immediate review of certain non-final rulings of district courts.

The doctrine of pendent appellate jurisdiction is a judicially created supplement to these methods of seeking immediate review of non-final district court rulings. The doctrine allows us, "[w]here we have jurisdiction over an interlocutory appeal of one ruling," to exercise jurisdiction over other, otherwise unappealable interlocutory decisions, where such rulings are "inextricably intertwined" with the order over which we properly have appellate jurisdiction, or where review of such rulings is "necessary to ensure meaningful review" of the appealable order. *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010) (internal quotation marks omitted). This two-part standard derives from the Supreme Court's decision in *Swint v. Chambers County Commission*, *see* 514 U.S. at 51, a decision which noted that courts of appeals employ the doctrine but did not expressly endorse it. We have continued to employ this doctrine following *Swint*, although we have indicated that the exercise of pendent appellate jurisdiction is discretionary, *see Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 28 n.4 (2d Cir. 2010), and that we will only exercise it in "exceptional circumstances," *Jones v. Parmley*, 465 F.3d 46, 65 (2d Cir. 2006) (internal quotation mark omitted); *see also Bolmer*, 594 F.3d at 141 ("[P]endent appellate jurisdiction should be exercised sparingly, if ever." (internal quotation marks omitted)).

Review of a non-appealable interlocutory ruling will generally only be "*necessary* to ensure meaningful review" of the order over which we properly have jurisdiction when our review of the appealable ruling would be "handicapped by our failure to review" the non-appealable decision. *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 109 (2d Cir. 2006), *overruled on other grounds by*

21

*Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).[5]

For two rulings to be "inextricably intertwined" before us, the "same specific question" will "underl[ie] both the appealable order and the non-appealable order," such that our resolution of the question will necessarily resolve the appeals from both orders at once. *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 576 (2d Cir. 2005) (noting that the issue presented in two separate orders was "identical"). Indeed, in deciding whether we had pendent appellate jurisdiction over the defendants' challenges to personal jurisdiction, we expressly distinguished *Hanil Bank v. PT. Bank Negara Indonesia, (Persero)*, 148 F.3d 127 (2nd Cir. 1998), and *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 760-61 (2d Cir. 1998), two cases involving interlocutory appeals from rulings on subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, based on the degree of similarity between the FSIA inquiry and the personal jurisdiction inquiry. In *Hanil Bank*, we found that we did have pendent appellate jurisdiction, because "[t]he finding of subject matter jurisdiction under the commercial activities exception [to the FSIA] entailed a finding of minimum contacts, and that finding was therefore conclusive on the personal jurisdiction question as well. In other words, the issues of subject matter jurisdiction and personal jurisdiction were inextricably intertwined, because the [*Hanil Bank*] court could not have answered the former without saying everything that was required to answer the latter." *Rein*, 162 F.3d at 760-61. In contrast, in *Rein*, we concluded that the exercise of pendent appellate jurisdiction was not appropriate where the relevant FSIA exception was premised on whether the case was alleged to result from an act of aircraft sabotage and we determined that this inquiry was not

---

[5] We separate the two parts of the *Swint* standard for clarity purposes. In some cases, however, we acknowledge that the analysis of the two parts will be substantially the same. *See Rein*, 162 F.3d at 758.

"essentially identical" to the question of personal jurisdiction, and that "we [could] easily decide subject matter jurisdiction and leave key issues of personal jurisdiction unresolved." *Id.* at 761.

Significantly, we have stressed that the pendent appellate jurisdiction standard is not satisfied when we are confronted with two similar, but independent, issues, and resolution of the non-appealable order would require us to conduct an inquiry that is distinct from and "broader" than the inquiry required to resolve solely the issue over which we properly have appellate jurisdiction. *Britt v. Garcia*, 457 F.3d 264, 273 (2d Cir. 2006) (declining to exercise pendent appellate jurisdiction of a challenge to the sufficiency of evidence presented at trial in an appeal from a denial of qualified immunity);[6] *see also Skehan*, 465 F.3d at 109 (declining to exercise jurisdiction over appeal that would require a "separate further inquiry" into state law issues distinct from the issue raised in interlocutory appeal). This is true even when "considerations of efficiency" might "argue for deciding both issues" together, *Rein*, 162 F.3d at 758-59, and when the two issues are factually, and even legally, similar, *see Britt*, 457 F.3d at 273-74; *Visa Check*, 280 F.3d at 132 n.4 (concluding that we lacked jurisdiction, in appeal of order certifying class, over separate appeal of district court's denial of motion to strike expert report submitted in support of class certification, even though "the

---

[6]Although we did not stress this point in our analysis of pendent appellate jurisdiction in *Britt*, asserting jurisdiction over the evidentiary sufficiency issue would have been particularly inappropriate given that, as we highlighted earlier in the opinion, the denial of qualified immunity is appealable "*to the extent that it turns on an issue of law*," 457 F.3d at 271 (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)), and indeed the appeal "must not pose the [evidentiary] sufficiency question over which *Johnson* [*v. Jones*, 515 U.S.,] made clear we have no interlocutory appellate jurisdiction," *id.* Permitting assertion of pendent appellate jurisdiction over a question of this type would substantially undermine the requirement that interlocutory appeals of denials of qualified immunity be limited to those turning exclusively on questions of law, an independent reason to deny pendent appellate jurisdiction in that case.

23

parties' substantive arguments [on both issues] may be similar").[7]

We have not yet provided clear guidance on the standard district courts should apply to motions seeking certification of a "collective action" under § 216(b) of FLSA. Although they are not required to do so by FLSA, district courts "have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).[8] In determining whether to exercise this discretion in an "appropriate case[]," the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases,[9] we think is sensible.

---

[7] A possible exception to this concern for avoiding broader and distinct inquiries is *Merritt v. Shuttle, Inc.*, 187 F.3d 263 (2d Cir. 1999), in which we held, in an appeal of the denial of a motion to dismiss based on qualified immunity, that review of a district court's earlier ruling denying a motion to dismiss based on lack of subject matter jurisdiction would be "necessary to ensure meaningful review" of the qualified immunity order. *Merritt*, 187 F.3d at 269. While inquiry into subject matter jurisdiction may well involve "broader" and "distinct" questions from those posed by the appealable interlocutory order, *Merritt*'s holding is easily justified under the prong of our pendent jurisdiction analysis directed at whether review of the pendent issue is necessary to ensure meaningful review of the appealable order, given "our independent obligation to satisfy ourselves of the jurisdiction of [our] court and the court below." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 121 (2d Cir. 2007). However, this justification has no applicability in this case.

[8] *Hoffmann-La Roche* involved § 7(b) of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 626(b), which "incorporates enforcement provisions of the Fair Labor Standards Act," including § 216(b). *Hoffmann-La Roche*, 493 U.S. at 167; *see also* 29 U.S.C. § 626(b). *Hoffmann-La Roche*'s interpretation of § 216(b) therefore binds us in FLSA cases as well as in ADEA cases. *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997).

[9] Indeed, while courts speak of "certifying" a FLSA collective action, it is important to stress that the "certification" we refer to here is only the district court's exercise of the discretionary power, upheld in *Hoffmann-La Roche*, to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in *Hoffmann-La Roche* has not been sent,

The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. *See, e.g.*, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258-62 (11th Cir. 2008); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (Lynch, J.); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.). The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Sbarro*, 982 F. Supp. at 261. In a FLSA exemption case, plaintiffs accomplish this by making some showing that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions," on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme. *Family Dollar*, 551 F.3d at 1259. The "modest factual showing" cannot be satisfied simply by "unsupported assertions," *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991), but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* "similarly situated" plaintiffs do in fact exist, *see Sbarro*, 982 F. Supp. at 261. At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-

---

so long as such plaintiffs are "similarly situated" to the named individual plaintiff who brought the action. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (noting that "certification" of a collective action is a device to facilitate notice to potential class members and does not actually "create a class of plaintiffs" for a FLSA collective action). Thus "certification" is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful "case management" tool for district courts to employ in "appropriate cases." *Hoffmann-La Roche*, 493 U.S. at 169, 174.

certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice. *See, e.g.*, *Family Dollar*, 551 F.3d at 1261; *Hipp*, 252 F.3d at 1218.

The plaintiffs here ask us to review the district court's decision to deny their motion to send opt-in notice to potential class members — a first-stage determination as described above. We conclude that this ruling does not satisfy the standard we have articulated for the exercise of pendent appellate jurisdiction. Review of the Collective Action Order on the merits would require us to determine whether the district court abused its discretion in determining that plaintiffs had failed to make the "modest factual showing" that potential plaintiffs existed who were "similarly situated" to themselves. *See Hoffmann-La Roche*, 493 U.S. at 169 (noting that district courts have "discretion" to implement § 216(b) by facilitating the sending of notice). That question is quite distinct from the question whether plaintiffs have satisfied the much higher threshold of demonstrating that common questions of law and fact will "predominate" for Rule 23 purposes in the eventual action. While the two issues in this case are admittedly similar, we are easily able to determine here that the higher predominance standard has not been met without addressing whether the same evidence plaintiffs have put forward in support of Rule 23 class certification could satisfy the lower standard for the sending of notice pursuant to § 216(b) and *Hoffmann-La Roche*. This is so even though the district court may have relied on and felt itself bound by the Collective Action Order in denying class certification because it is the "issues presented" to this Court that must be "inextricably intertwined" for pendent appellate jurisdiction to be properly exercised, not the issues presented to the district court. *CFTC v. Walsh*, 618 F.3d 218, 225 n.3 (2d Cir. 2010); *see also id.* at 222, 224-25 & n.3 (declining to exercise pendent appellate jurisdiction over district court's issuance of a temporary restraining order, even though jurisdiction was proper over later order

26

converting the restraining order into a preliminary injunction). The two rulings are therefore not "inextricably intertwined" because the "same specific question" does not underlie each ruling, and review of the Collective Action Order is not "necessary to ensure meaningful review" of the class certification decision.

We have emphasized in the past the narrowness of the pendent appellate jurisdiction standard, and this case may well demonstrate precisely why we keep that standard narrow. The danger created by an overly permissive practice of deciding issues over which we lack appellate jurisdiction in interlocutory appeals is that the practice is subject to abuse; parties may bring insubstantial interlocutory appeals in order to bring before us issues which we ordinarily would not be able to review until after a final decision of the district court, thus circumventing the finality rule:

> A system in which parties could get immediate appellate review of multiple issues once the door was opened for review of one issue would tempt such parties to rummage for rulings that would authorize interlocutory appeals, thereby securing appellate decisions on many issues without having to wait until after trial. . . . [While *Swint* presented a situation in which the party seeking to appeal the non-appealable order was a different party from that which had brought the proper appeal], pendent issues raised by the party that has the right to bring an interlocutory appeal are at least as great a threat to the final-order scheme as are pendent issues raised by other parties. Indeed, it appears, if anything, more likely that one party will appeal a flimsy collateral issue with the intention of obtaining interlocutory review for other issues it presses than that different parties will conspire to secure early appellate rulings.

*Rein*, 162 F.3d at 757.

The concern expressed in *Rein* appears to be well founded when we review the record in this case. There are several indications that plaintiffs here may have sought to bring a motion for class certification on their § 191 claim for the express purpose of getting Judge Hurley's earlier Collective Action Order before this Court if and when the district court denied the class certification motion. *See, e.g.*, Tr. of Aug. 11, 2006 Conf., *Myers v. Hertz Corp.*, No. 02-CV-4325 (DRH) (MLO)

27

(E.D.N.Y. Aug. 11, 2006):

> [PLAINTIFFS' COUNSEL]: One thing that we've made no bones about with Magistrate Judge Orenstein . . . after Judge Hurley's decision [on collective action certification], we didn't say we are trying to get around it. We said we have to make our record for appeal and we're trying to get to the Second Circuit. As we told Judge Orenstein, one way to get there was a 23(f) petition. . . . If your honor denies our request [for class certification] . . . based on the [Collective Action Order], at least that gives us the opportunity to then file a 23(f) petition . . . .

*Id.* at 5; *see also* Tr. of July 11, 2006 Conf., *Myers v. Hertz Corp.*, No. CV-02-4325 (DRH) (MLO)

(E.D.N.Y. July 11, 2006):

> THE COURT: I'm not about to grant nationwide discovery on anything at this moment. . . . Given the context of where we are. The only claim I have, frankly, is a 191 claim. So to go nationwide is absolutely silly at this stage, without there being something further from a court of competent jurisdiction to tell me to go further.
>
> [PLAINTIFFS' COUNSEL]: I understand that, and I think on the — our other option is to push ahead with the Rule 23 motion.
>
> THE COURT: But my problem still is, if the only claim that survived is the state claim, 191, where are we going with that?
>
> [PLAINTIFFS' COUNSEL]: There is still a — the federal claim is still here. It just applies to the named people. There's no opt-in on it.
>
> THE COURT: I know, but the discovery with regard to a class —
>
> [PLAINTIFFS' COUNSEL]: Our position is, if we get a decision one way or the other — if we get a decision from Judge Hurley in any way denying the Rule 23 motion, even if he says, I'm denying it based on my [Collective Action Order], then we can file a 23(f) petition with the Second Circuit.

*Id.* at 17-18. In other words, it seems that plaintiffs believed that the Collective Action Order was wrong and sought class certification at least in part as a vehicle for bringing that Order before us through a Rule 23(f) appeal of the intervening class certification decision. We impute no bad faith to the plaintiffs, who have raised substantial arguments to us regarding the merits of that Order (arguments on which we express no ultimate opinion), but our pendent appellate jurisdiction cases

28

foreclose plaintiffs' apparent strategy from being successful: we may not allow a party to circumvent the final decision rule by, "having gotten its foot in the door, seeking to bring in everything else it has." *Rein*, 162 F.3d at 757.

We therefore conclude that we may not exercise pendent appellate jurisdiction over any district court rulings in this case other than the specific July 24, 2007 class certification opinion for which we granted plaintiffs' Rule 23(f) petition for leave to appeal. We note, however, that our decision not to exercise pendent appellate jurisdiction over the Collective Action Order should not be taken as bearing on that order's merits one way or the other. *See Britt*, 457 F.3d at 274. Our decision today does not prevent plaintiffs from renewing their motion for the district court to facilitate opt-in notice for a potential FLSA collective action in this case, perhaps after further factual investigation by plaintiffs' counsel, or after the district court allows further discovery between the parties (a decision lying within that court's discretion, of course).[10] Indeed, like a motion for class certification brought pursuant to Rule 23, a motion to facilitate the sending of notice of a pending FLSA action to potential opt-in plaintiffs may be renewed after a denial, and a district court may continually evaluate, as the case progresses, whether such notice should be provided, whether an existing class should be modified, or whether the action should be "de-certified" if the evidence shows that opt-in plaintiffs are not "similarly situated" to the named individual plaintiffs. *See, e.g.*, *Family Dollar*, 551 F.3d at 1241-43, 1262 (noting that district court denied two motions to facilitate nationwide notice to potential plaintiffs prior to certifying a FLSA collective action on plaintiffs' third motion); *cf. In re Initial Public Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007)

---

[10] We will not address Myers's arguments related to the scope of discovery in this case in light of our disposition of the other issues.

("District courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial.").

## V. Conclusion

For the foregoing reasons, the judgment of the district court denying class certification is AFFIRMED.