Alfred MORRIS, Terrell Gardner, and Andre Henry, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

LETTIRE CONSTRUCTION, CORP., Lettire Builders, Inc., Lettire 124th Street, LLC, Urban Builders Collaborative, LLC, Nicholas Lettire, and Gerard Lettire, Jointly and Severally, Defendants.

No. 12 Civ. 0043(NRB).

United States District Court, S.D. New York.

Sept. 18, 2012.

Brent Edward Pelton, Esq., Pelton & Associates, P.C., New York, NY, for Plaintiffs.

Michael J. Volpe, Esq., Nicholas Marco Reiter, Esq., Venable LLP (N.Y.C), New York, NY, for Defendant.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Alfred Morris, Terrell Gardner, and Andre Henry (collectively, "plaintiffs") bring this action under the Fair Labor Standards Act (the "FLSA"), the New York Labor Laws (the "NYLL"), and New York common law. In the instant motion, plaintiffs request that this Court: (1) authorize the distribution of a collective action notice to a class of potential opt-in plaintiffs; (2) approve plaintiffs' proposed notice of lawsuit, opt-in consent form, and deadline reminder letter; and (3) direct the defendants to disclose the names, addresses, phone numbers, and email address of potential opt-in plaintiffs. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND [1]

Plaintiffs formerly worked as foremen and laborers for Lettire Construction Cor-poration; Lettire Builders, Inc.; Lettire 124th Street, LLC; and Urban Builders Collaborative, LLC (collectively, "Lettire Construction" or the "Company"), a common enterprise specializing in the construction of affordable housing developments in New York, New Jersey, and Connecticut. (Compl. ¶¶ 1, 40.) Between August 2009 and November 2011, each plaintiff worked as either a foreman or a laborer at one or more of the Company's construction sites. (Morris Decl. ¶¶ 1, 3; Gardner Decl. ¶¶ 1, 3; Henry Decl. ¶¶ 1, 3.) Those construction sites included: the Dumont Project, located at 1490 Dumont Avenue in Brooklyn, New York; the Tapestry Project, located at 245 East 124th Street in New York, New York; the Via Verde Project, located at 700 Brook Avenue in Bronx, New York; and Project Renewal, located at 2240 Washington Avenue in Bronx, New York.[2] (Morris Decl. ¶ 3; Gardner Decl. ¶ 3; Henry Decl. ¶ 3; Reiter Decl. ¶¶ 2–5.)

On January 4, 2012, plaintiffs filed a putative class action against Lettire Con-

---

1. The background is derived from the Class and Collective Action Complaint ("Compl."), filed January 4, 2012; the Declaration of Brent E. Pelton, Esq. in Support of Plaintiffs' Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to Be Issued to All Persons Similarly Situated ("Pelton Decl."), filed May 18, 2012, and the exhibits annexed thereto, including the Declaration of Plaintiff Alfred Morris in Support of Plaintiffs' Motion for Conditional Certification and Notice to Class ("Morris Decl."), the Declaration of Plaintiff Terrell Gardner in Support of Plaintiffs' Motion for Conditional Certification and Notice to Class ("Gardner Decl."), and the Declaration of Plaintiff Andre Henry in Support of Plaintiffs' Motion for Conditional Certification and Notice to Class ("Henry Decl."); and the Declaration of Nicholas M. Reiter in Opposition to Plaintiffs' Motion for Conditional Certification ("Reiter Decl."), filed June 15, 2012, and the exhibits annexed thereto.

2. Plaintiff Alfred Morris worked as a laborer at the Dumont Project, the Tapestry Project, the Via Verde Project, and Project Renewal between August 2009 and November 2011. (Morris Decl. ¶¶ 1, 3.) Plaintiff Terrell Gardner was employed as a laborer at the Dumont Project, the Tapestry Project, and the Via Verde Project from January 2010 to April 2011. (Gardner Decl. ¶¶ 1, 3.) Finally, plaintiff Andre Henry worked as a laborer at the Tapestry Project and the Via Verde Project between January 2010 and May 2011. (Henry Decl. ¶¶ 1, 3.) Defendants apparently contest that Mr. Henry worked at the Via Verde Project. (Reiter Decl., Ex. G; Mem. of Law in Opp'n to Pls.' Mot. to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to All Persons Similarly Situated ("Defs.' Opp'n") at 3.)

struction and its co-founders, brothers Nicholas Lettire and Gerard Lettire (together with Lettire Construction, "defendants"), seeking to recover unpaid overtime wages under the FLSA and the NYLL and unpaid prevailing wages under the NYLL and New York common law. (Compl. ¶¶ 1, 12–13, 25.) With respect to their claims under the FLSA, plaintiffs allege that they typically worked between 45 and 55 hours per week, but did not receive overtime premiums for hours worked in excess of 40 per week until April 2010, when Lettire Construction changed its alleged payment policy. (*Id.* ¶¶ 45, 53, 61; Morris Decl. ¶¶ 4–5; Gardner Decl. ¶¶ 4–5; Henry Decl. ¶¶ 4–5.)

According to plaintiffs, prior to April 2010, defendants paid plaintiffs by check for the first 40 hours worked and in cash for any additional hours worked, with all hours paid at the same "straight time" rate of $20 per hour for foremen or $12 per hour for laborers. (Morris Decl. ¶ 6; Gardner Decl. ¶ 6; Henry Decl. ¶ 6.) Plaintiffs allege that they received their weekly check and cash payment in a single envelope that a site supervisor distributed. (Morris Decl. ¶¶ 6–7; Gardner Decl. ¶¶ 6–7; Henry Decl. ¶¶ 6–7.) Plaintiffs claim that they always received their weekly payments in the same manner, no matter where they worked or who supervised them. (Morris Decl. ¶¶ 5–6; Gardner Decl. ¶¶ 5–6; Henry Decl. ¶¶ 5–6.)

Plaintiffs claim that the alleged failure to pay overtime wages was not particular to them, but was a company-wide policy. (Compl. ¶¶ 15, 71; Morris Decl. ¶ 7; Gardner Decl. ¶ 7; Henry Decl. ¶ 7.) According to all three plaintiffs, when a site supervisor distributed the weekly payments, the employees opened their envelopes in one another's presence, such that plaintiffs could see that their coworkers were not receiving overtime wages. (Morris Decl.

¶ 7; Gardner Decl. ¶ 7; Henry Decl. ¶ 7.) Plaintiff Alfred Morris, who was employed by defendants as a foreman, alleges that he complained about the lack of overtime payments to the Lettire brothers. (Morris Decl. ¶ 9.) According to Mr. Morris, Nicholas Lettire responded, "[T]hat's not how we do it." (*Id.*) Plaintiffs Terrell Gardner and Andre Henry, who worked as laborers, similarly allege that they complained to superiors. (Gardner Decl. ¶ 9; Henry Decl. ¶ 9.) Both men claim that they raised the overtime issue to a site supervisor, who "ignored [plaintiffs'] complaint[s]" and "blew [them] off." (Gardner Decl. ¶ 9; Henry Decl. ¶ 9.)

Based on the foregoing, plaintiffs seek to conditionally certify an FLSA collective action on behalf of all foremen and laborers who are or were employed by defendants between January 4, 2009 and the entry of judgment in this case. Defendants concede that conditional certification is appropriate as to foremen and laborers who worked at the same project sites as plaintiffs. However, defendants argue that plaintiffs' proposed certification is overly broad insofar as it applies to foremen and laborers who worked at other construction sites, as well as foremen and laborers who began their employment after April 2010, when defendants changed their alleged payment policy. In addition, defendants object to various aspects of plaintiffs' proposed notice, consent form, and reminder letter.

## DISCUSSION

### I. *Motion for Conditional Certification*

#### A. **Legal Standards**

Section 216(b) of the FLSA authorizes an employee to maintain a collective action on behalf of himself and all "similarly situated" employees. 29 U.S.C. § 216(b). Unlike a class action brought

under Rule 23 of the Federal Rules of Civil Procedure, a collective action requires "similarly situated" employees to affirmatively opt-in to the litigation by filing written consent forms with the court. *Id.* "[D]istrict courts have discretion, in appropriate cases, to implement [Section] 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir.2010) (internal quotation marks and alterations omitted). In determining whether to exercise such discretion, courts in this Circuit follow a two-step test. *Id.* at 554–55.

■ The first step, at issue in this motion, is commonly referred to as conditional certification. *See Guillen v. Marshalls of MA, Inc.,* 750 F.Supp.2d 469, 475 (S.D.N.Y.2010). During this stage, "the court mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs." *Myers,* 624 F.3d at 555. A plaintiff's burden at this stage is minimal: He must only make a "modest factual showing" that he and the potential opt-in plaintiffs were "victims of a common policy or plan that violated the law." *Id.* (internal quotation marks omitted).

■ To satisfy this burden, the plaintiff must offer "substantial allegations" demonstrating a "factual nexus" between the plaintiff and the potential opt-in plaintiffs. *Diaz v. S & H Bondi's Dep't Store,* No. 10 Civ. 7676(PGG), 2012 WL 137460, at *3 (S.D.N.Y. Jan. 18, 2012) (internal quotation marks omitted); *see also Myers,* 624 F.3d at 555 (stating that the plaintiff must offer more than "unsupported assertions" to satisfy its burden at the first stage) (internal quotation marks omitted). The plaintiff may adduce evidence through its own pleadings, affidavits, and declarations, *Raniere v. Citigroup Inc.,* 827 F.Supp.2d 294,

319 (S.D.N.Y.2011), including any hearsay statements contained therein. *Hernandez v. Merrill Lynch & Co.,* No. 11 Civ. 8472(KBF), 2012 WL 1193836, at *3 (S.D.N.Y. Apr. 6, 2012); *see also Cunningham v. Elec. Data Sys. Corp.,* 754 F.Supp.2d 638, 644 (S.D.N.Y.2010) (noting that courts use a "relatively lenient evidentiary standard" during the first stage of the analysis) (internal quotation marks omitted).

■ The plaintiff's burden at the first stage is "very low." *Raniere,* 827 F.Supp.2d at 319; *see also Myers,* 624 F.3d at 555; *Lynch v. United Servs. Auto. Ass'n,* 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007). Importantly, the court does "not weigh the merits" of the plaintiff's underlying claims. *Cunningham,* 754 F.Supp.2d at 644. Nor does the court resolve factual disputes or evaluate credibility. *Id.; see also Raniere,* 827 F.Supp.2d at 324.

■ As the term *conditional* certification suggests, the court's determination at the first stage is only preliminary. During the second stage, which often occurs after the close of discovery, the court applies increased scrutiny to determine whether the opt-in plaintiffs are in fact "similarly situated" to the named plaintiff, such that a collective action should proceed. *Myers,* 624 F.3d at 555; *see also Morano v. Intercontinental Capital Grp., Inc.,* No. 10 Civ. 2192(KBF), 2012 WL 2952893, at *5 (S.D.N.Y. July 17, 2012) (describing the second-stage standard as "stringent") (internal quotation marks omitted). If the court is not satisfied that the opt-in plaintiffs are similarly situated to the named plaintiffs, the court will decertify the collective action and dismiss the claims of the opt-in plaintiffs without prejudice. *See, e.g., Cohen v. Gerson Lehrman Grp., Inc.,* 686 F.Supp.2d 317, 327 (S.D.N.Y.2010); *Morano,* 2012 WL 2952893, at *6.

### B. Analysis

Plaintiffs seek conditional certification on behalf of themselves and all other similarly situated current and former foremen and laborers employed by defendants between January 4, 2009 and the entry of judgment in this case. Defendants argue that plaintiffs' proposed conditional class is overly broad insofar as it includes foremen and laborers who (1) did not work at the same construction sites as plaintiffs and (2) began their employment with Lettire Construction after April 2010, when defendants changed their alleged payment policy. We shall address defendants' arguments in turn.

### 1. *Foremen and Laborers Who Did Not Work at the Same Construction Sites as Plaintiffs*

According to defendants, plaintiffs have not adequately shown that the alleged failure to pay overtime wages was a company-wide policy that affected *all* foremen and laborers across *all* of defendants' project sites. The Court disagrees.

█ As a preliminary matter, it is undisputed that plaintiffs have made a modest factual showing that the foremen and laborers at four of defendants' construction sites did not receive overtime wages for hours worked over 40 per week. Each plaintiff submitted a signed declaration in which he alleges that defendants paid him by check for the first 40 hours worked and

in cash for any additional hours worked, with all hours paid at the same "straight time" rate. (Morris Decl. ¶ 6; Gardner Decl. ¶ 6; Henry Decl. ¶ 6.) In their declarations, plaintiffs personally identify five other laborers who were subject to the same alleged policy.[3] (Morris Decl. ¶ 7; Gardner Decl. ¶ 7; Henry Decl. ¶ 7.)

In an effort to cabin plaintiffs' allegations, defendants contend that the Company operates "several" different construction sites at any given moment, suggesting that plaintiffs' collective experience at four of the sites was "relatively limited [in] scope." (Defs.' Opp'n at 2, 3.) Notably, however, defendants do not specify how many sites Lettire Construction maintained during the relevant time period, let alone how many foremen and laborers worked independently of plaintiffs.[4] Accordingly, it is impossible for the Court to conclude that plaintiffs' experiences were statistically insignificant. *Compare Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575(LAP)(GWG), 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) (denying conditional nationwide certification when plaintiff failed to show a "factual nexus between his own wage and hour claim and the claims of thousands of other [employees] across 830 [of defendants'] stores across the country").

To the contrary, the record supports a reasonable inference that plaintiffs' experiences reflected a company-wide policy. First, plaintiffs allege that they received

---

**3.** These laborers include "Eddy," "Alfonso," "Javier," "Raul," and Shamell Mooney. Although defendants characterize these individuals as "loosely identified" (Defs.' Opp'n at 9), first names suffice at the notice stage. *See, e.g., Guzelgurgenli v. Prime Time Specials Inc.*, No. 11 Civ. 4549(ADS)(WDW), 883 F.Supp.2d 340, 349–50, 2012 WL 3264314, at *7 (E.D.N.Y., Aug. 8, 2012).

**4.** The closest defendants come to contextualizing plaintiffs' allegations is when they state

that Lettire Construction employs approximately 35 individuals, only 17 or 18 of whom work on-site. (Defs.' Opp'n at 2; *but see* Answer at ¶ 42 (admitting that defendants "employ[] at least forty employees at one time")). Assuming the veracity of Mr. Morris's statement that he supervised eight to ten laborers (Morris Decl. ¶ 2), this would leave fewer than seven to ten employees to staff the Company's other active sites.

purely "straight time" pay in the same distinctive manner (single envelopes containing a mixture of checks and cash), no matter where they worked or who supervised them. (Morris Decl. ¶¶ 5–6; Gardner Decl. ¶¶ 5–6; Henry Decl. ¶¶ 5–6.) Where plaintiffs allege such idiosyncratic conduct across multiple locales, it is reasonable to infer that the same pattern of behavior occurred at defendants' other active sites. *See, e.g., Capsolas v. Pasta Res., Inc.,* No. 10 Civ. 5595(RJH), 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (finding sufficient evidence of a companywide tip deduction policy when plaintiffs alleged similar conduct at five of defendants' eight restaurants); *Karic v. Major Auto. Cos.,* 799 F.Supp.2d 219, 227 (E.D.N.Y.2011) ("[E]ach of the eight plaintiffs who worked at various Major World locations articulated a common practice of the dealerships to pay $20.00 per day plus commissions, leaving a sufficient basis from which to infer the same pattern of behavior as to all Major World entities.").

Second, plaintiffs allege—and defendants do not dispute—that the Company centrally operates and controls *all* of its construction sites, including those where no named plaintiff worked. (Compl. ¶¶ 70–71.) In such circumstances, courts frequently authorize notice across all of the defendant's work sites. *See, e.g., Capsolas,* 2011 WL 1770827, at *3 (authorizing notice to all of defendants' restaurants, including those where no named plaintiff worked, when they "share[d] common ownership" and were "administered by the same company"); *Karic,* 799 F.Supp.2d at 227 (granting certification across all of defendants' car dealerships when plaintiffs alleged "common ownership and control of all of the[ ] entities, including the three dealerships for which no plaintiff has yet appeared"); *Garcia v. Pancho Villa's of*

*Huntington Vill., Inc.,* 678 F.Supp.2d 89, 93–94 (E.D.N.Y.2010) (finding that plaintiffs, all of whom worked at the same restaurant, were similarly situated to employees at two other restaurants when all three locations were owned by the same individuals); *see also Guzelgurgenli,* 883 F.Supp.2d at 351–52, 2012 WL 3264314, at *9; *Siewmungal v. Nelson Mgmt. Grp. Ltd.,* No. 11 Civ. 5018(BMC), 2012 WL 715973, at *3 (E.D.N.Y. Mar. 3, 2012).

Finally, plaintiffs have adduced corroborating evidence of a company-wide policy. In his declaration, Mr. Morris alleges that he complained to Nicholas Lettire about the alleged lack of overtime payments. (Morris Decl. ¶ 9.) According to Mr. Morris, Mr. Lettire responded, "[T]hat's not how we do it," suggesting to Mr. Morris that the Company does not pay overtime premiums at any of its sites. (*Id.*) Given Mr. Lettire's stature as the President and Chief Executive Officer of Lettire Construction Corporation, his alleged admission to Mr. Morris supports plaintiffs' minimal burden at this stage. *See Guzelgurgenli,* 883 F.Supp.2d at 350, 2012 WL 3264314, at *8 ("[C]ourts routinely grant conditional certification for employees of all locations owned by a defendant based on ... statements allegedly made by a manager or supervisor regarding a common unlawful policy or practice, without any further inquiry into its credibility."); *see also LeGrand v. Educ. Mgmt. Corp.,* No. 03 Civ. 9798(HB)(HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004); *Harrington v. Educ. Mgmt. Corp.,* No. 02 Civ. 0787(HB), 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002).

To rebut plaintiffs' showing, defendants urge the Court to consider a number of competing declarations.[5] Doing so, however, would require the Court to evaluate

---

5. Specifically, defendants rely on declarations    from Nicholas Lettire, who claims that he

credibility and determine the facts. Such actions are inappropriate at this stage. *Raniere*, 827 F.Supp.2d at 324; *see also Cohen*, 686 F.Supp.2d at 330 (declining to "wade into a thicket of competing factual assertions at this preliminary stage"). The accuracy of the parties' competing views will be tested through discovery and may be raised before the Court on a motion to decertify the class after the close of discovery. At this stage, however, defendants' equally untested declarations do not undermine plaintiffs' showing. *See Winfield v. Citibank, N.A.*, 843 F.Supp.2d 397, 407 n. 6 (S.D.N.Y.2012) ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y.2007) (stating that, at the notice stage, "the factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA").

For the foregoing reasons, the Court authorizes the distribution of notice to all foremen and laborers at all of defendants' construction sites, including those where no named plaintiff worked.

### 2. *Foremen and Laborers Who Began Their Employment After April 2010*

Defendants argue that plaintiffs cannot meet their burden to show that they are similarly situated to foremen and laborers who began their employment with Lettire Construction after April 2010, when plaintiffs acknowledge that the Company began paying overtime wages. The Court agrees.

■■■ To justify court-authorized notice, plaintiffs must demonstrate a "factual nexus" between themselves and potential opt-in plaintiffs *"with regard to their employer's alleged FLSA violation."* *Diaz*, 2012 WL 137460, at *3 (emphasis added) (internal quotation marks omitted); *see also Raniere*, 827 F.Supp.2d at 323 (noting that the relevant question is whether plaintiffs and potential opt-in plaintiffs "were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week") (internal quotation marks omitted). Here, plaintiffs do not allege that defendants violated the FLSA after April 2010.[6] To the contrary, each plaintiff concedes that he began receiving overtime wages at approximately that time. (Morris Decl. ¶ 5; Gardner Decl. ¶ 5; Henry Decl. ¶ 5.) Thus, plaintiffs cannot demonstrate that they are similarly situated to potential opt-in plaintiffs vis-á-vis a violation of the FLSA when plaintiffs acknowledge that no such violation occurred.

Nonetheless, plaintiffs contend that foremen and laborers who began their employ-

---

"never told" Mr. Morris that Lettire Construction does not pay overtime wages (Decl. of Nicholas Lettire in Opp'n to Pls.' Mot. for Conditional Certification ¶ 13), and from four laborers, each of whom alleges that he does not recall working overtime hours prior to 2010 but always received overtime premiums subsequent to that date (Decl. of Jose Almodovar in Opp'n to Pls.' Mot. for Conditional Certification ¶¶ 6, 10; Decl. of Dario Benitez in Opp'n to Pls.' Mot. for Conditional Certification ¶¶ 6, 10; Decl. of Manuel Paz in Opp'n to Pls.' Mot. for Conditional Certification ¶¶ 6,

10; Decl. of Radames Santana in Opp'n to Pls.' Mot. for Conditional Certification ¶¶ 6, 10).

**6.** Although plaintiffs assert three causes of action arising from defendants' alleged failure to pay prevailing wage rates after April 2010 (Compl. ¶ 72), plaintiffs bring these claims under the NYLL and New York common law (*Id.* ¶ 25). Accordingly, the prevailing wage claims do not form part of the FLSA collective action.

ment with Lettire Construction after April 2010 might "suffer" if plaintiffs "were mistaken about the dates in which they began receiving overtime." (Mem. of Law in Further Supp. of Pls.' Mot. to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to Be Issued to All Persons Similarly Situated at 8.) The Court is not at liberty to ease hypothetical suffering in anticipation of a party's hypothetical mistake. In any event, foremen and laborers who began their employment after April 2010 may always file their own collective action if the circumstances so warrant.

Thus, the Court denies plaintiffs' request to authorize notice to foremen and laborers who began their employment with Lettire Construction after April 2010.

### C. Conclusion

For the foregoing reasons, the Court authorizes the distribution of notice to foremen and laborers who worked at any of defendants' construction sites, including those where no named plaintiff worked, between January 4, 2009 and April 30, 2010.

## II. *Notice to Potential Opt–In Plaintiffs*

### A. Legal Standards

■ Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains "broad discretion" over the form and content of the notice. *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 106 (S.D.N.Y. 2003) (*citing Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). In exercising this discretion, the court should be "guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition

or imposing undue burdens on the defendants." *Guzelgurgenli,* 883 F.Supp.2d at 356, 2012 WL 3264314, at *13 (internal quotation marks omitted).

### B. Analysis

Plaintiffs request that the Court approve their proposed notice of lawsuit, opt-in consent form, and deadline reminder letter. (Pelton Decl., Exs. F, G, H.) Defendants contend that plaintiffs' proposed materials are deficient in a number of respects. We consider defendants' objections *seriatim.*

#### 1. *Recipients*

Plaintiffs' proposed notice of lawsuit is addressed to all foremen and laborers who are or were employed by defendants between January 4, 2009 and the entry of judgment in this case. In light of the ruling set forth above, defendants' arguments as to the overbreadth of the proposed notice are well-taken. As explained *supra,* plaintiffs have not satisfied their burden in showing that they are similarly situated to foremen and laborers who began their employment with Lettire Construction after April 2010.

Thus, the notice should be addressed to foremen and laborers who worked for defendants "at any time on or after January 4, 2009 to April 30, 2010."

#### 2. *Notice Period*

Plaintiffs' proposed notice and consent form provide a 90–day notice period. Defendants contend—and plaintiffs ultimately concede—that a 60–day notice period is sufficient. The Court agrees. *See, e.g., Diaz,* 2012 WL 137460, at *8 (noting that "[m]any courts in this district have set a 60–day period," and that longer periods are warranted "on consent or where spe-

cial circumstances indicate that an extended opt-in period is appropriate").

Accordingly, the notice and consent form shall require opt-in plaintiffs to consent to join the collective action within 60 days of the notice mailing date.

### 3. *Consent Form Filing*

The proposed consent form directs potential opt-in plaintiffs to send their completed forms to plaintiffs' counsel. Defendants contend that the forms should be sent to the Clerk of the Court, rather than to plaintiffs' counsel, so that prospective plaintiffs do not mistakenly believe that they are precluded from retaining their own counsel. The Court shares defendants' concern that the proposed consent form does not adequately inform potential plaintiffs of their right to choose their own counsel. However, we feel it is appropriate in this case for opt-in plaintiffs to send their consent forms to plaintiffs' counsel, because the completed forms will contain sensitive information (such as prospective plaintiffs' home addresses) that cannot be filed with the Clerk of the Court prior to redaction. *See* S.D.N.Y. Elec. Case Filing Rules & Instructions §§ 21.2, 21.3.

Thus, the consent form should direct prospective plaintiffs to send their completed forms to plaintiffs' counsel, *see, e.g., Delaney v. Geisha NYC, LLC,* 261 F.R.D. 55, 59–60 (S.D.N.Y.2009) (approving the same opt-in procedure), who shall redact the forms and file them with the Clerk of the Court within five days of receipt. The consent form should clearly indicate that opt-in plaintiffs' have the right to select their own counsel. *See Siewmungal,* 2012 WL 715973, at *4 ("Language stating that opt-in plaintiffs have the freedom to choose their own counsel is an appropriate provision of any proposed notice.").

### 4. *Reminder Notice*

Plaintiffs propose the distribution of a "reminder" notice prior to the expiration of the opt-in period to alert potential plaintiffs that the deadline is coming due. Plaintiffs contend that a reminder notice promotes the broad remedial purpose of the FLSA, and that such notice is particularly appropriate here, where plaintiffs have consented to a 60–day notice period. Defendants characterize the proposed notice as an attempt to take "another bite at the apple" and to "badger" prospective plaintiffs. (Defs.' Opp'n at 14.) They ask the Court to deny plaintiffs' request in its entirety. We decline to do so.

Neither party cites any case law authorizing or rejecting the issuance of a reminder notice. Indeed, it appears that only one court in this District has analyzed whether such notice is appropriate. *See Guzelgurgenli,* 883 F.Supp.2d at 357–58, 2012 WL 3264314, at *15–16 (denying plaintiffs' request to distribute a reminder notice when plaintiffs did "not identif[y] any reason why a reminder notice [wa]s necessary"). Courts in other jurisdictions have reached divergent conclusions. *See, e.g., Smallwood v. Illinois Bell Tel. Co.,* 710 F.Supp.2d 746, 753–54 (N.D.Ill.2010) ("[A] reminder is unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit.") (internal quotation marks omitted); *Jennings v. Cellco P'ship,* No. 12 Civ. 293 (SRN/TNL), 2012 WL 2568146, at *6 (D.Minn. July 2, 2012) (approving distribution of a reminder notice, subject to the condition that it contain a disclaimer that the court does not encourage or discourage participation in the case); *Sanchez v. Sephora USA, Inc.,* No. 11 Civ. 3396(SBA), 2012 WL 2945753, at *6 (N.D.Cal. July 18, 2012) (authorizing a reminder notice on the grounds that such notice "is appropriate in

275

an FLSA action since the individual is not part of the class unless he or she opts-in").

Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate. *Accord Harris v. Vector Mktg. Corp.,* 716 F.Supp.2d 835, 847 (N.D.Cal.2010).

### 5. *Joint Proposed Forms*

In accordance with defendants' request, the parties are directed to meet and confer to formulate a proposed joint notice, consent form, and reminder letter that are consistent with this Memorandum and Order. The parties shall submit the joint proposed forms to the Court by October 2, 2012. If the parties cannot agree to joint proposed forms, plaintiffs are directed to file their proposed forms by October 2, 2012, and defendants are given until October 9, 2012 to file a memorandum explaining their objections to the proposed forms.

### III. *Disclosure Request*

Finally, plaintiffs seek disclosure by defendants of the names, addresses, phone numbers, and email addresses of potential plaintiffs to the collective action in order to send them the proposed notice and consent form. Numerous courts have found that discovery of such information is appropriate, *see Raniere,* 827 F.Supp.2d at 327 (collecting cases), and defendants do not oppose this request. Thus, defendants shall make these disclosures by October 2, 2012.

### *CONCLUSION*

For the foregoing reasons, the motion (docket no. 17) is granted in part and denied in part.