ALISON J. NATHAN, District Judge:
Named Plaintiffs Debra Julian and Stephanie McKinney bring suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 - 19, and the laws of Connecticut and New York, against their former employer, Metropolitan Life Insurance Company. Currently before the Court is Plaintiffs' motion for conditional certification, disclosure of contact information, and court-authorized notice. Motion, Dkt. No. 34. Plaintiffs request that the Court conditionally certify a collective action comprising "all people employed by MetLife as Claim Specialists and Senior Claim Specialists who worked on long term disability insurance claims ('LTD Claim Specialists') at any time since February 8, 2014 (three years from the filing of the complaint in this action)." Memo. in Support of Motion ("Support"), Dkt. No. 39, at 3 (footnote omitted). For the following reasons, the Court grants the motion for conditional certification and orders the parties *701 to confer and submit a joint proposed notice as described below.
I. Background
Plaintiffs Debra Julian and Stephanie McKinney formerly worked as LTD Claim Specialists for Metropolitan Life Insurance Company ("MetLife"). Second Amended Complaint ("SAC"), Dkt. No. 17, ¶¶ 1, 14-15. LTD Claim Specialists were tasked with gathering information from insured individuals claiming entitlement to long-term disability benefits and presenting this documentation to MetLife staff and supervisors to approve or deny the claims. SAC ¶ 26. Julian worked for MetLife in Oriskany, New York from 2004 to 2016 and served as an LTD Claim Specialist from 2011 through 2016. SAC ¶ 14. McKinney worked as an LTD Claim Specialist in MetLife's Bloomfield, Connecticut office from 2013 through 2016. SAC ¶ 15. Opt-in Plaintiff Tonya Gill worked as an LTD Claim Specialist from 2009 through 2014 out of MetLife's Chicago-area office. Gill Decl., Dkt. No. 37, ¶¶ 3-4.
On February 8, 2017, Julian[1] filed a complaint against MetLife on behalf of herself and other current and former LTD Claim Specialists alleging that MetLife had improperly classified LTD Claim Specialists as exempt employees under the FLSA and had thus improperly denied LTD Claim Specialists overtime payments to which they were due. Complaint, Dkt. No. 1. Specifically, Plaintiffs point out that prior to November 2013, MetLife classified LTD Claim Specialists as hourly employees and paid them overtime under the FLSA. SAC ¶ 5. In November 2013, MetLife reclassified LTD Claim Specialists as "exempt" employees and ceased paying them overtime for hours they worked in excess of 40 hours per week. SAC ¶¶ 6-8. The Second Amended Complaint alleges that LTD Claim Specialists regularly work in excess of 40 hours (on average between 45 and 60 hours) without receiving overtime pay. SAC ¶¶ 28-32.
On August 1, 2017, Plaintiffs moved for conditional certification of a collective action under 29 U.S.C. § 216(b) and for court-approved distribution of notice. Motion. In support of their motion, the Plaintiffs each provided a declaration. See Julian Decl., Dkt. No. 35; McKinney Decl, Dkt. No. 36; Gill Decl. Plaintiffs also provided copies of certain MetLife documents, including sections of its Claims Management Guide, Dkt. Nos. 38-3, 38-8, 38-10, 38-11, 38-12, 38-13, 38-14, 38-15 (filed under seal); a training document for new hires, Dkt. No. 38-6 (filed under seal); a document entitled "Claim Review Milestones-Initial," Dkt. No. 38-7 (filed under seal); documents regarding the long-term disability claim management process and decisional components, Dkt. No. 38-9 (filed under seal); and documents describing how long-term disability claims were transitioned to full disability, Dkt. No. 38-16 (filed under seal). Defendants opposed the motion for conditional certification, arguing that Plaintiffs have not established that they are "similarly situated" to members of the proposed class. See Memo. in Opp. ("Opp."), Dkt. No. 48, at 13-27. To support their opposition, Defendants filed numerous documents, including in part transcripts of depositions of the three Plaintiffs, Dkt. Nos. 49-2, 49-3, 49-4; a copy of MetLife's official job description for LTD Claim Specialists, Dkt. No. 49-5; several MetLife documents, Dkt. Nos. 49-11 to -20 (filed under seal); and declarations of 11 current MetLife LTD Claim Specialists attesting *702 to their job duties, Dkt. Nos. 49-17 to -27.
II. Legal Standard
The FLSA authorizes workers to sue on behalf of both themselves and "other employees similarly situated." 29 U.S.C. § 216(b). "District courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Vargas v. HSBC Bank USA, N.A., No. 11-cv-7887 (DAB), 2012 WL 10235792, at *3 (S.D.N.Y. Aug. 9, 2012) (quoting Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) ). Courts in this circuit apply a two-step method to determine whether a collective action should be certified. Myers, 624 F.3d at 554-55. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555. At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Id. If they are not, the action may be "de-certified," and the opt-in plaintiffs' claims will be dismissed without prejudice. Id.
At the first step, plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.' " Id. (quoting Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.) ). While this showing "cannot be satisfied simply by 'unsupported assertions,' " it "should remain a low standard of proof because the purpose of the first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Id. (citation omitted); see also Lynch v. United Servs. Auto. Ass'n, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007) (describing plaintiffs' burden as "very low" and "minimal"). This standard is " 'considerably less stringent' than the requirements for class certification under Rule 23." Poplawski v. Metroplex on the Atl., LLC, No. 11-cv-3765 (JBW), 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (citation omitted). As a result, in a FLSA exemption case, plaintiffs need only make "some showing that 'there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." Myers, 624 F.3d at 555 (alteration in original) (citation omitted). In other words, "the Court must merely find some identifiable factual nexus which binds [Plaintiff] and potential class members together as victims of a particular practice." Alvarado Balderramo v. Taxi Tours Inc., No. 15-cv-2181 (ER), 2017 WL 2533508, at *3 (S.D.N.Y. June 9, 2017) (alteration in original) (citation omitted).
To meet this low burden, "[t]he plaintiff may adduce evidence through its own pleadings, affidavits, and declarations, including any hearsay statements contained therein." Morris v. Lettire Constr. Corp., 896 F.Supp.2d 265, 269 (S.D.N.Y. 2012) (citation omitted). "[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." Hernandez v. Bare Burger Dio Inc., No. 12-cv-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases). At this initial stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."
*703 Cunningham v. Elec. Data Sys. Corp., 754 F.Supp.2d 638, 644 (S.D.N.Y. 2010) (quoting Lynch, 491 F.Supp.2d at 368 ). "Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Lynch, 491 F.Supp.2d at 368 ; see also Hoffmann, 982 F.Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here."). As a result, "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." Lynch, 491 F.Supp.2d at 369 ; see also Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007). Thus "courts in this Circuit routinely decline to consider ... opposing declarations, because the issue for the Court is not whose evidence is more persuasive, but 'whether Plaintiffs have made the modest factual showing that they are required to make at this stage of the litigation.' " Vasto v. Credico (USA) LLC, No. 15-cv-9298 (PAE), 2016 WL 2658172, at *15 (S.D.N.Y. May 5, 2016) (citation omitted); see also Moore v. Publicis Groupe SA, No. 11-1279 (ALC), 2012 WL 2574742, at *11 (S.D.N.Y. June 28, 2012) ("While a large amount of discovery has been conducted, discovery remains incomplete. Defendants' arguments are more appropriate after discovery is finished.").
III. Plaintiffs Have Sufficiently Shown That They Are "Similarly Situated" to the Proposed Class of Opt-In Plaintiffs
The Court finds that the Plaintiffs have met their burden in showing that they are similarly situated to the proposed class of "all people employed by MetLife as Claim Specialists and Senior Claim Specialists who worked on long term disability insurance claims ... at any time since February 8, 2014." Support at 3. Through the robust evidence submitted with their motion, Plaintiffs have shown that LTD Claim Specialists performed similar job duties and were subject to the same policy reclassifying them in November 2013 as exempt from overtime payment under the FLSA as required by Myers . See 624 F.3d at 555.
A. All LTD Claim Specialists Were Classified as Exempt from the FLSA Pursuant to a Common Policy
It is undisputed that prior to November 2013, all LTD Claim Specialists were classified as hourly employees who were not exempt from overtime payment under the FLSA and that in November 2013, all LTD Claim Specialists were reclassified as exempt from the FLSA. See Support at 4 n.4, 9; Opp. at 15-16; see also Gill Decl. ¶¶ 8-13; Julian Decl. ¶¶ 8-13; McKinney Decl. ¶¶ 8-13. As a result, the Court finds that the Plaintiffs have demonstrated that the proposed class of LTD Claim Specialists were "classified as exempt pursuant to a common policy or scheme." Myers, 624 F.3d at 555.
The Defendant does not dispute that LTD Claim Specialists were classified as exempt pursuant to a common policy but argues that exempt classification on its own is not sufficient to demonstrate that all LTD Claim Specialists were "similarly situated." Opp. at 15-16. The Court agrees-under Myers, plaintiffs must demonstrate not only that the proposed employees were classified pursuant to a common policy, but also that the proposed class had similar job duties. See 624 F.3d at 555. If the rule were otherwise, "every case brought before the courts alleging improper designation as non-exempt employees would automatically qualify for conditional class certification."
*704 Chemi v. Champion Mortg., No. 05-cv-1238 (WHW), 2006 WL 7353427, at *4 (D.N.J. June 21, 2006). However, the Plaintiffs do not simply argue that all LTD Claim Specialists were treated as exempt from the FLSA's overtime provision. Rather, they argue that the Defendant treated LTD Claim Specialists as a single group when it decided to uniformly reclassify all of them as exempt from the FLSA in November 2013. See Support at 20-21; Reply at 12. Courts in this district have found that an employer's treatment of a particular group of employees "collectively-initially classifying them as exempt and now as non-exempt-'militates strongly in favor of granting certification' and 'cuts against' " a defendant's argument "that individualized inquiries will be necessary." Jackson v. Bloomberg, L.P. , 298 F.R.D. 152, 161 (S.D.N.Y. Mar. 19, 2014) (quoting Trawinski v. KPMG LLP , No. 11-cv-2978 (PAC), 2012 WL 6758059, at *4 (S.D.N.Y. Dec. 21, 2012) ); see also Jacob v. Duane Reade, Inc., No. 11-cv-0160 (JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) ("Defendants did not consider the differences in ASMs' job duties sufficient to require Duane Reade to undertake an individual analysis before categorically classifying all ASMs as exempt from FLSA"). Such "blanket classification" serves as one piece of evidence to "suggest that whatever differences exist among the employees' job duties, those differences are irrelevant for purposes of determining the applicability of the FLSA." Schaefer v. M & T Bank Corp., 122 F.Supp.3d 189, 195-96 (S.D.N.Y. 2015). As a result, the Court finds that while blanket reclassification of all LTD Claim Specialists as exempt from FLSA is not sufficient on its own to warrant class certification, it does demonstrate that LTD Claim Specialists were subject to a common policy and further suggests, in conjunction with the Plaintiffs' other evidence discussed below, that LTD Claim Specialists are a "similarly situated" group.
B. All LTD Claim Specialists Had Sufficiently Similar Job Duties
The Court also concludes that the Plaintiffs have sufficiently shown that all current and former LTD Claim Specialists are "similarly situated" because they had similar job descriptions and responsibilities as required by Myers . See 624 F.3d at 555. First, Plaintiffs all attested in their initial affidavits to having the same primary duties-to "gather information concerning Long Term Disability claims, enter claim information into MetLife systems, and communicate with specialized MetLife staff, such as nurses and vocational experts, and supervisors about the information." Gill Decl. ¶ 14; accord Julian Decl. ¶ 14, 16-17; McKinney Decl. ¶ 16. Contrary to the Defendant's claim, the depositions of the Plaintiffs elicited descriptions of the LTD Claim Specialist job that were very similar to those in the Plaintiffs' depositions. See, e.g., Julian Depo., Dkt. No. 38-4, at 25-29, 59; Julian Depo., Dkt. No. 49-2, at 159-61; McKinney Depo., Dkt. No. 38-5, at 145-46, 201, 208-10, 244. Moreover, even the declarations of LTD Claim Specialists filed by Defendant state that the duties of an LTD Claim Specialist included gathering information about claims, entering information into MetLife's systems, and communicating with MetLife staff about that information. See, e.g., Barry Decl., Dkt. No. 49-17, ¶¶ 3, 7, 16-17; Cala Decl., Dkt. No. 49-18, ¶¶ 3, 5-7, 9-10; Crawford Decl., Dkt. No. 49-19, ¶¶ 3, 5, 7, 10; Hawes Decl., Dkt. No. 49-21, ¶¶ 3-4, 7-8.
At bottom, the declarations and depositions of Plaintiffs and the declarations provided by the Defendant do not dispute what duties LTD Claim Specialists performed, but rather how much discretion LTD Claim Specialists used in performing those duties. Compare Julian Decl. ¶ 18 ("In carrying out my job duties, I, like all *705 other LTD Claim Specialists, was required to adhere to a tightly controlled process for handling Long-Term Disability claims."), and Julian Depo., Dkt. No. 49-2, at 59 ("[W]e were peons. We were the gofers. We collected the information. We did not make the decisions."), with Barry Decl. ¶ 3 ("That is all part of making an informed decision as to whether to approve or deny a claim-a decision that is mine to make with regard to each claim in my book."), and Hawes Decl. ¶ 3 ("I use my judgment and critical thinking every day in my work, not only to make the ultimate claim decision, but also to decide what information I need in order to make that determination, as well as the steps and timeframe to obtain that information."). However, determining whether all LTD Claim Specialists exercised a similar amount of discretion-and whether the exercise of that discretion rendered LTD Claim Specialists exempt from the FLSA's overtime provision-is a fact-intensive question that will require significant discovery and an assessment of the credibility of each party's LTD Claim Specialists. However, at the first step of the conditional certification process, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Cunningham , 754 F.Supp.2d at 644. As a result, the proper procedure at this stage of the litigation is to conditionally certify the class of individuals employed as LTD Claim Specialists because, as alleged in the Plaintiffs' declarations, they " 'together were victims of a common policy or plan that violated the law.' " Myers, 624 F.3d at 555. This is sufficient at the first stage of conditional certification, particularly where all LTD Claim Specialists were initially classified as exempt and then collectively reclassified. Jackson, 298 F.R.D. at 161.
In support of their claims that all LTD Claim Specialists performed the same function, Plaintiffs have also provided MetLife's own training and decisionmaking materials, including the Claims Management Guide, which provided the process by which claims were expected to be handled. See Dkt. Nos. 38-3, 38-8, 38-10, 38-11, 38-12, 38-13, 38-14, 38-15 (filed under seal) (portions of Claims Management Guide pertaining to claims process); see also Gill Decl. ¶ 18 (describing the claims process as "tightly controlled" and the Claims Management Guide as "provid[ing] detailed instructions for every element" of the LTD Claim Specialist job); Julian Decl. ¶ 18 (same); McKinney Decl. ¶ 20 (same); Barry Decl. ¶ 11 (acknowledging use of Claims Management Guide but disputing frequency of use). By its own terms, the Claims Management Guide was intended to "manage quality" and "maintain consistency" across MetLife's short term disability and long term disability claims processers by "utilize[ing] a standard methodology which includes a system of processes, procedures and resources." Dkt. No. 38-3 at McKinney_MLIC001030 (filed under seal). Newly hired LTD Claim Specialists were likewise subject to a uniform 3-week training program to learn "the claims management process with opportunities imbedded to practice various elements of claims processing." Dkt. No. 38-6 at McKinney_MLIC 001822 (filed under seal). Claims were expected to proceed along a standard timeline with certain milestones set for every 5 to 10 days until the claim was resolved. Dkt. No. 38-7 (filed under seal). LTD Claim Specialists were likewise given uniform claims-process checklists, Dkt. No. 38-9 at Julian_000002635 (filed under seal), and uniform guides for interviewing claimants, Dkt. Nos. 38-10 through -12 (filed under seal), and they prepared decision letters using standardized forms available on MetLife's correspondence software, Dkt. No. 38-13 (filed under seal). In sum, MetLife's determination that all LTD Claim Specialists could *706 receive identical training and guides supports the conclusion that all LTD Claim Specialists performed essentially the same role and thus are "similarly situated" for the purpose of conditional certification.
The Defendant does not dispute that all LTD Claim Specialists were given the same guides and training documents. Instead, it argues that "use of guides or handbooks does not prove that an employee is not exercising discretion in judgment in carrying out her duties." Opp. at 17 (citing 29 C.F.R. § 541.704 ). This argument, however, goes to the merits of whether Plaintiffs were properly designated as exempt from the FLSA's overtime provision and has no bearing on whether LTD Claim Specialists were similarly situated-only whether that group of similarly situated LTD Claim Specialists were entitled to overtime payment. As a result, the Court finds that the MetLife's own manuals support the conclusion that LTD Claim Specialists generally performed the same duties and are thus sufficiently "similarly situated" at this stage of the litigation. The Defendant also asserts that LTD Claim Specialists are not similarly situated because "the record already contains wildly different facts regarding how often the Claims Management Guide is referred to or used" by different LTD Claim Specialists. Opp. at 20. It is not clear at this early stage whether it is legally relevant how often different LTD Claim Specialists consulted the Claims Management Guide. Regardless of the answer to that question, however, a discrepancy in how often LTD Claim Specialists consulted the Claims Management Guide is insufficient to overcome the Plaintiffs' evidence militating in favor of conditional certification-namely, that LTD Claim Specialists were collectively treated as exempt and collectively reclassified subject to a single policy change by their employer. See Myers, 624 F.3d at 555 ; Jackson, 298 F.R.D. at 161.[2]
C. Conditional Certification of LTD Claim Specialists at All MetLife Locations Is Appropriate
The Defendant argue that Plaintiffs-who worked at only three of MetLife's offices-have not sufficiently shown that LTD Claim Specialists from other branches are similarly situated and therefore properly part of the conditionally certified class. Opp. at 21-22; see also SAC ¶ 14 (Julian worked in a New York office); SAC ¶ 15 (McKinney worked in the Connecticut office); Gill Decl. ¶¶ 3-4 (Gill worked in the Illinois office). The Court disagrees.
Based on the declarations of the Plaintiffs, it appears that there are only four or five offices in which LTD Claim Specialists work. See Julian Decl. ¶ 3 n.1 (identifying offices in Oriskany, New York; Bloomfield, Connecticut; Tampa, Florida; Chicago, Illinois; and Marlborough, Massachusetts); McKinney Decl. ¶ 3 n.1 (identifying offices in Bloomfield, Connecticut; Oriskany, New York; Tampa, Florida; and Chicago, Illinois). The three Plaintiffs work at three of these four or five offices and have all attested to performing similar duties and regularly working in excess of forty hours. They have also stated that they know through observation or conversations that other LTD Claim Specialists both in their offices and others perform the same job duties and regularly work over 40 hours. Gill Depo., Dkt. No. 49-4, at 269-76; Julian Depo., Dkt. No. 38-4, at 110, 118-20; Julian *707 Depo., Dkt. No. 49-2, at 74-77; McKinney Depo., Dkt. No. 49-3, at 253-55. Based on this information, it seems very likely that LTD Claim Specialists in the remaining one or two offices also performed the same job duties and regularly worked over 40 hours. This common sense conclusion is supported by the numerous documents provided by the Plaintiffs-described above at length-indicating that all LTD Claim Specialists at all MetLife branches were trained using the same materials and provided the same checklists and scripts to use in processing claims. See supra. MetLife's reclassification of all LTD Claim Specialists at all locations from non-exempt to exempt also supports the conclusion that all LTD Claim Specialists are similarly situated. See Jackson, 298 F.R.D. at 161 ; Jacob, 2012 WL 260230, at *8. Furthermore, the Plaintiffs testified in their depositions that they participated in trainings where MetLife employees from other offices would share their computer screens to demonstrate the claims process, and that Plaintiffs knew from these trainings that LTD Claim Specialists in other offices handled disability claims in the same way. See Julian Depo., Dkt. No. 38-4, at 116-18; McKinney Depo., Dkt. No. 49-3, at 102-05.
Together, this evidence is sufficient to demonstrate that all LTD Claim Specialists working in any of MetLife's offices are similarly situated for purposes of conditional certification. Courts in this circuit have granted conditional certification where plaintiffs had first-hand knowledge of a much smaller proportion of a corporation's locations. For example, in Ravenell v. Avis Budget Car Rental, LLC, the court granted conditional certification for all shift managers at all 1,000 Avis Car Rental locations even though the plaintiffs had only worked at three of those locations. No. 08-cv-2113 (SLT) (ALC), 2010 WL 2921508, at *1, *4-5 (E.D.N.Y. July 19, 2010). In Guttentag v. Ruby Tuesday, Inc., Judge Baer conditionally certified a collective action covering tipped employees in 750 restaurants in 39 states although the plaintiffs had produced evidence only specifically attesting to the conditions in four of those states. No. 12-cv-3041 (HB), 2013 WL 2602521, at *1-2 (S.D.N.Y. June 11, 2013). Based on such examples, the Court concludes that Plaintiffs have provided sufficient evidence to warrant conditionally certifying a nationwide class of LTD Claim Specialists.
IV. The Parties Shall Confer on the Proposed Notice
In its opposition to conditional certification, the Defendant raises several objections to the notice proposed by the Plaintiffs both in form and substance. Opp. at 27-28. The parties are ordered to attempt to resolve these disputes related to the method and text of the proposed notice. By April 30, 2018, the parties shall submit a new proposed notice. If, after meeting and conferring, the parties should fail to reach an agreement on one or more issues, the parties are ordered to submit a letter to the Court of no more than eight pages. The letter should identify the precise issue(s) on which disagreement remains and set forth each side's respective position on those issues. Each party should include citations to supporting case law sufficient to enable the Court to render a decision.
V. Conclusion
For the foregoing reasons, Plaintiffs' motion for conditional certification is granted, and the parties are ordered to submit their jointly proposed notice or joint letter to this Court by April 30, 2018. This resolves Docket Number 34.
Because this Memorandum Opinion and Order may reference information that the parties seek to maintain under seal, the Court will file it under TEMPORARY
*708 SEAL. The parties are directed to meet and confer and submit within 10 days any proposed redactions for the version of this Memorandum Opinion and Order to be filed on the public docket. If the parties are unable to reach agreement, they may set forth their respective positions in letter briefs not to exceed three pages in length. Although the Court will publicly docket an order announcing its bottom-line conclusion, it will refrain from publicly docketing this Memorandum Opinion and Order until it has ruled on the proposed redactions.
SO ORDERED.

Plaintiffs McKinney and Gill joined the suit subsequent to the filing of the original complaint.

The Defendant raises other alleged differences between the proposed conditional class of LTDCSs such as how often they convened group meetings with medical and vocational resources to discuss a claim and how often-if ever-various LTDCSs could make claim decisions without review of their supervisors. Opp. at 21. For the same reasons the Court explained above, these inquiries do not defeat conditional certification at this initial stage.