**21-805-cv**
*Haley v. TIAA*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2021

ARGUED: MAY 10, 2022
DECIDED: DECEMBER 1, 2022

No. 21-805-cv

MELISSA HALEY, individually and on behalf of herself
and all others similarly situated,
*Plaintiff-Appellee,*

*v.*

TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,
*Defendant-Appellant.*\*

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: NEWMAN, WALKER, and SULLIVAN, *Circuit Judges.*

————

Melissa Haley alleges that a participant loan program that
Teachers Insurance and Annuity Association of America (TIAA)

———————————

\* The Clerk of Court is directed to amend the caption as set forth above.

offered to her retirement plan is a prohibited transaction under the Employee Retirement Income Security Act of 1974 (ERISA). After ruling that Haley's suit could proceed against TIAA as a non-fiduciary under ERISA, the district court certified a class of employee benefit plans whose fiduciaries contracted with TIAA to offer loans that were secured by a participant's retirement savings. In this interlocutory appeal challenging the certification decision, TIAA argues that the district court erred when it found that common issues predominated over individual ones without addressing the effect of ERISA's statutory exemptions on liability classwide and without making any factual findings as to the similarities of the loans. We agree. Because the predominance inquiry of Federal Rule of Civil Procedure 23(b)(3) requires that a district court analyze defenses, and the court did not do so here, we VACATE the district court's decision and REMAND for proceedings consistent with this opinion.

————

TODD S. COLLINS (Ellen T. Noteware, *on the brief*), Berger Montague PC, Philadelphia, PA; John J. Nestico, Todd M. Schneider, *on the brief*, Schneider Wallace Cottrell Konecky LLP, Charlotte, NC and Emeryville, CA, *for Plaintiff-Appellee*.

JAIME A. SANTOS (James O. Fleckner, Michael K. Isenman, Kelsey Pelagalli, *on the brief*), Goodwin Procter LLP, Washington, DC and Boston, MA, *for Defendant-Appellant*.

Leah M. Nicholls, *on the brief*, Public Justice, P.C., Washington, DC, *for amicus curiae Public Justice*.

Dara S. Smith, William Alvarado Rivera, *on the brief*, AARP Foundation, Washington, DC, *for amici curiae AARP and AARP Foundation*.

Meaghan VerGow, *on the brief*, O'Melveny & Myers LLP, Washington, DC, *for amici curiae The Securities Industry and Financial Markets Association, American Benefits Council, Society of Professional Asset Managers and Recordkeepers, American Council of Life Insurers, and Chamber of Commerce of the United States of America*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Melissa Haley alleges that a participant loan program that Teachers Insurance and Annuity Association of America (TIAA) offered to her retirement plan is a prohibited transaction under the Employee Retirement Income Security Act of 1974 (ERISA). After ruling that Haley's suit could proceed against TIAA as a non-fiduciary under ERISA, the district court (Oetken, *J.*) certified a class of employee benefit plans whose fiduciaries contracted with TIAA to offer loans that were secured by a participant's retirement savings. In this interlocutory appeal challenging the certification decision, TIAA argues that the district court erred when it found that common issues predominated over individual ones without addressing the effect of ERISA's statutory exemptions on liability classwide and without making any factual findings as to the similarities of the loans. We agree. Because the predominance inquiry of Federal Rule of Civil Procedure 23(b)(3) requires that a district court analyze defenses, and

the court did not do so here, we VACATE the district court's decision and REMAND for proceedings consistent with this opinion.

## BACKGROUND

Haley participates in a retirement plan offered by Washington University in St. Louis (WashU). The WashU plan is a defined contribution savings plan that is tax-deferred under 26 U.S.C. § 403(b) and governed by ERISA.[1] WashU chose to offer certain services to its participants, including the ability to borrow against retirement savings without incurring a taxable event. During the relevant period, WashU plan participants were permitted to take out either non-collateralized or collateralized loans. To facilitate these loans, WashU engaged with outside vendors known as "service providers," including TIAA and Vanguard.

Non-collateralized loans enable participants to borrow directly from their retirement accounts without pledging any assets as collateral. Vanguard serviced the non-collateralized loans for WashU plan participants and charged participants a fixed origination fee and annual maintenance fees. Non-collateralized loans are not at issue in this case.

This suit instead challenges the collateralized loan products that TIAA offered. Fiduciaries responsible for some eight thousand plans, such as WashU, retained TIAA to service collateralized loans for their respective plans. The collateralized loans shared the

---

[1] 29 U.S.C. § 1002(34). Defined contribution plans are retirement savings vehicles that allow participants to contribute a portion of their salary to the plan. Section 403(b) plans are available to employees of public schools and certain non-profits.

following attributes. TIAA required participants to borrow the desired loan amount from TIAA's "General Account" rather than directly from their own retirement accounts.[2] TIAA charged interest on the loan, which participants paid (along with the principal) to the General Account. The interest rates that participants paid, however, depended on several variables, including the type of loan contract between TIAA and the plan and the relevant state's insurance laws.

TIAA secured the loans with collateral equal to the loan amount plus 10%. TIAA invested that sum in the participant's account in a TIAA Traditional Annuity, an interest-bearing fixed annuity that paid a guaranteed minimum rate of return, plus additional amounts of interest declared at TIAA's discretion. The plan participant kept the return earned on the collateral. Returns varied based on the type of the annuity contract that TIAA offered to the plan, and when and where the loan was obtained. The underlying annuity contract also affected whether a borrowing participant could designate funds already invested in a TIAA Traditional Annuity as collateral or whether the participant had to transfer funds from existing investments into a TIAA Traditional Annuity.

While it did not charge origination or maintenance fees, TIAA was compensated for servicing the loans. TIAA states that its compensation was the difference, or "spread," between the interest

---

[2] An insurance company's "general account" refers to the assets that guarantee the insurer's obligations under its insurance contracts and provide liquidity. Participants do not invest directly in the General Account, which TIAA represents is a broadly diversified portfolio of mostly fixed income assets.

that participants paid TIAA on the loan and the amount TIAA credited to participants on their collateral as investment income.[3]

Haley took out four collateralized loans from her WashU plan between 2011 and 2015, and a fifth in 2019 while this lawsuit was pending. In 2017, she brought the instant action seeking to hold TIAA directly liable on the grounds that the collateralized loans violated ERISA's so-called "prohibited transactions" rules. In the alternative, Haley sought to hold TIAA liable as a non-fiduciary for its knowing participation in the alleged violations by her plan fiduciary, WashU. Haley, however, did not name WashU as a defendant.

The district court held that TIAA was not an ERISA fiduciary with respect to the challenged loans but permitted Haley's claims to proceed against TIAA as a non-fiduciary. Haley then moved to certify a nationwide class of similarly situated ERISA-governed plans. TIAA opposed, asserting that the challenged loans were too disparate to warrant class treatment. TIAA further objected to certification on the grounds that ERISA recognizes exemptions to prohibited transactions and that the factors relevant to whether a collateralized loan is exempt are not subject to common proof. The district court certified a class under Rule 23(b)(3) as to each of Haley's non-fiduciary claims. But the court did not make any findings about the purported variations among the loans in the putative class and did not address how the exemptions to the statutory prohibitions weighed in the certification analysis. TIAA timely filed an interlocutory appeal under Rule 23(f).

---

[3] Haley alleged that the spread is even greater because it includes the difference between the returns earned on the investments in TIAA's General Account and the interest rate that TIAA credits the participants on their collateral. Regardless, this difference is not material to this appeal.

## DISCUSSION

Haley is not the first WashU plan participant to allege that the collateralized loans serviced by TIAA are prohibited transactions under ERISA.[4] But her suit is unique because she is seeking to hold TIAA liable on behalf of a nationwide class of ERISA-governed plans whose members received loans under terms approved by plan administrators, without naming those administrator fiduciaries as defendants. TIAA argues that the district court improperly certified the multi-plan class.[5]

---

[4] *See Davis v. Wash. Univ. in St. Louis*, No. 4:17-CV-1641 RLW, 2018 WL 4684244, at *5 (E.D. Mo. Sept. 28, 2018) (dismissing the ERISA § 406(a)(1)(B) claim against WashU), *aff'd in part, rev'd in part and remanded*, 960 F.3d 478 (8th Cir. 2020). The *Davis* plaintiffs did not appeal the dismissal of their prohibited transaction claims.

[5] The class certified by the district court includes: "All individual account retirement plans governed by ERISA (the 'Plans') for which, at any time from February 5, 2011 through the date of judgment: (a) Teachers Insurance and Annuity Association [of America] ('TIAA') provided services that included collateralized loans (the 'Loans') for Plan participants (the 'Borrowing Participants'); (b) TIAA required the Borrowing Participants to provide collateral in the amount of 110% of the principal balance of the Loans, which collateral TIAA invested in its general account; and (c) (i) TIAA charged Loan interest at a rate in excess of the interest rate credited to Borrowing Participants on the invested collateral; (ii) TIAA kept for or paid to itself amounts earned on the amount of the invested collateral, equal to the principal amount of the outstanding Loans, that were in excess of the amounts credited to Borrowing Participants; (iii) the amounts that TIAA credited to Borrowing Participants on the invested collateral in excess of the principal amount of the Loan were less than Borrowing Participants would have received had the collateral remained in the Borrowing Participants' designated investment options; and/or (iv) TIAA caused loss to the Participant Borrowers and the Plans." Special App'x 5.

### I.      ERISA's Prohibited Transactions, Briefly Explained

ERISA is a comprehensive federal statute that regulates retirement and employee benefit plans, as well as the conduct of fiduciaries who act on behalf of plan participants and other beneficiaries.[6] Section 404 of ERISA sets out general duties for plan fiduciaries, sponsors, and others. Section 406 further protects participants and beneficiaries by prohibiting certain transactions involving plan assets that are "believed to pose a high risk of fiduciary self-dealing."[7] Subsection 406(a) regulates transactions between a plan and "parties in interest" with respect to the plan. A "party in interest" includes, among others, persons providing services to the plan.[8] Haley alleges that the collateralized loans violate two provisions of § 406(a):

> Except as provided in section [408] of this title . . . [a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> . . .
>
> (B) lending of money or other extension of credit between the plan and party in interest; [or]

---

[6] *See Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 26 (2d Cir. 2002) (quoting H.R. Rep. No. 533, 93d Cong., 2nd Sess. 1, reprinted in 1974 U.S.C.C.A.N. 4639, 4639).

[7] *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006).

[8] 29 U.S.C. § 1002(14)(B). At a general level, a "party in interest" is any entity "that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000).

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.][9]

Section 406(a)'s broad language would ban most transactions involving service providers, like TIAA. But § 406(a) is expressly limited by § 408, which authorizes the Secretary of Labor to exempt certain transactions so long as they are in the "interests of the plan's participants and beneficiaries."[10] TIAA asserts that two exemptions are potentially applicable here.[11] First, § 408(b)(1) exempts loans to participants provided that, among other things, they are made in accordance with specific provisions of the plan document, "bear a reasonable rate of interest," and are "adequately secured."[12] Second, § 408(b)(17) permits transactions prohibited by § 406(a)(1)(B) and (D) as long as the plan pays no more and receives no less than "adequate consideration."[13]

---

[9] 29 U.S.C. §§ 1106(a)(1)(B), (D). Haley initially also alleged that TIAA charged excessive and unreasonable compensation, in violation of § 406(a)(1)(C). Haley does not oppose TIAA's request to modify the certification order as to this claim.

[10] *Boggs v. Boggs*, 520 U.S. 833, 846 (1997) (citing 29 U.S.C. § 1108(a)(2)) (internal quotation marks omitted).

[11] Because Haley has conceded that her § 406(a)(1)(C) claim should not be resolved classwide, we need not consider TIAA's arguments that the exemption to excessive compensation claims as set forth in § 408(b)(2) applies.

[12] 29 U.S.C. § 1108(b)(1). The Department of Labor's definition of "participant loans" presupposes that the loan is exempt under § 408(b)(1) and thus not a prohibited transaction. *See* 29 C.F.R. § 2550.408b-1(a)(3)(i). For our purposes, although we may use the term participant loan as shorthand, we express no opinion as to whether the challenged loans in fact meet the statutory definition.

[13] 29 U.S.C. § 1108(b)(17)(A).

## II.      Standard of Review

We review class certification decisions, including a district court's rulings that each of the Rule 23 requirements are satisfied, for abuse of discretion.[14] We give greater deference to decisions granting class certification than to those declining to certify.[15] But "[t]o be afforded this deference . . . the certification must be sufficiently supported and explained."[16]

Rule 23(a) requires that a proposed class be sufficiently numerous, have questions of law or fact common to the class, and involve representative plaintiffs whose claims or defenses are typical of the class and who can fairly and adequately protect the class's interests.[17] The district court certified the class under Rule 23(b)(3), pursuant to which a plaintiff must also establish that questions of law or fact common to the putative class "predominate" over questions affecting only individual members and that the class action vehicle is the superior method of adjudication.[18]

## III.      TIAA's Challenges to Certification

TIAA disputes Haley's ability to show both that there are questions common to the class and that such issues predominate.

---

[14] *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 31 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007); *Johnson v. Nextel Commc'ns. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

[15] *See Johnson*, 780 F.3d at 137.

[16] *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 97 (2d Cir. 2018).

[17] Fed. R. Civ. P. 23(a).

[18] *Johnson*, 780 F.3d at 137; Fed. R. Civ. P. 23(b)(3).

Because the district court determined that predominance was satisfied without analyzing the § 408 exemptions or TIAA's claimed variations among the loans, we vacate and remand for it to undertake that inquiry in the first instance.

### A.    Commonality

"Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."[19]  Commonality is usually easier to show than predominance[20] and the district court did not abuse its discretion in finding that former requirement satisfied.  As an example, whether the uniform requirement that collateral be held in a TIAA annuity product rendered TIAA a party in interest "us[ing] . . . [plan] assets" in violation of § 406(a)(1)(D) is a common issue bearing on the defendant's liability to the putative class.[21]  TIAA recycles many of its arguments relating to commonality in its challenge to Haley's ability to satisfy predominance.  Because those arguments are "more

---

[19] *Johnson*, 780 F.3d at 137 (internal citation and quotation marks omitted).

[20] *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

[21] 29 U.S.C. § 1106(a)(1)(D).  TIAA does not dispute that this attribute was a common feature of the collateralized loans it serviced.

efficiently addressed in light of the predominance . . . requirement[],"
we will consider them in that context.[22]

### B.    Predominance

TIAA's principal argument is that the district court erred by
failing to include ERISA's statutory exemptions as part of its
predominance inquiry.  We agree.

Predominance is not simply an exercise in tallying up issues; it
is a qualitative inquiry that entails "careful scrutiny" of the nature and
significance of a case's common and individual issues.[23]  To that end,
a complete assessment of predominance demands that a district court
"consider *all* factual or legal issues" and classify them as subject either
to common or individual proof.[24]  It is well settled that this exercise
includes any affirmative defenses,[25] such as the § 408 exemptions.[26]
Affirmative defenses do not carry "less weight" on the class
certification issue simply because the defendant will bear the burden

---

[22] *Johnson*, 780 F.3d at 140.

[23] *See In re Petrobras Sec.*, 862 F.3d 250, 271 (2d Cir. 2017) (internal
quotation marks and emphasis omitted); 1 McLaughlin on Class Actions
§ 5:23 (18th ed.).

[24] *Myers v. Hertz Corp.*, 624 F.3d 537, 550 (2d Cir. 2010) (internal
citation and quotation marks omitted).

[25] *Id.* (collecting cases); *Johnson*, 780 F.3d at 138 (noting that as part of
both the commonality and predominance analysis, the court "must assess
. . . the elements of the claims and defenses to be litigated" (internal
quotation marks omitted)).

[26] *Henry*, 445 F.3d at 619; *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d
1209, 1215 (2d Cir. 1987).

of proof at the merits stage.[27]  Here, as explained below, the district court's treatment of the exemptions was simply to exclude them from the predominance analysis because, as affirmative defenses, the burden of proving them rests with TIAA.  Rule 23(b)(3) demands more.

We start with § 408(b)(17), which exempts transactions that otherwise violate § 406(a)(1)(B) and (D) as long as the "plan receives no less, nor pays no more, than adequate consideration."[28]  There is no rule that clearly defines what consideration is "adequate"; it is instead a standard that takes into account whether the fiduciary exercised "good faith" in approving the amount the plan pays or receives.[29]  So, our "focus[] [is] on the *conduct of the fiduciaries* in determining the price, not the price itself."[30]  Haley asserts that the "adequacy" determination can be made classwide because good faith is evaluated against what is objectively reasonable.  TIAA argues that individualized proof must be marshalled from non-party plan fiduciaries showing how each plan fiduciary valued the assets and whether, given other options available to the plan, the fiduciary exercised good faith in selecting the terms offered by TIAA.  So, even if good faith is measured against an objective metric, the application

---

[27] *Myers*, 624 F.3d at 551.  TIAA does not dispute that, as a non-fiduciary, it also bears the burden of showing that an exemption applies.

[28] 29 U.S.C. § 1108(b)(17)(A).

[29] 29 U.S.C. § 1108(b)(17)(B)(ii).

[30] *Henry*, 445 F.3d at 619–20 (emphasis added) (interpreting the Department of Labor's Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17,632, 17,634) (May 17, 1988) and noting that, although the proposed regulation had no legal effect, "numerous circuit courts have adopted the DOL's proposed definition").

of facts pertaining to each non-party fiduciary may be individualized. Notwithstanding this dispute, the district court limited its analysis to suggesting only that determining whether the plans received adequate compensation "is not quite as easy" to resolve with common proof.[31]

As for the other exemption that TIAA asserts may apply, the district court's decision gives us no indication that the court factored it into its predominance analysis at all. Section 408(b)(1) exempts loans "made by the plan to parties in interest who are participants or beneficiaries of the plan" so long as, *inter alia*, the loans are "made in accordance with specific provisions regarding such loans set forth in the plan," "bear a reasonable rate of interest," and "are adequately secured."[32] The parties' briefs dispute whether the loans are eligible for a § 408(b)(1) exemption and whether such a determination could be made with classwide proof. TIAA emphasizes the individualized nature of reviewing each loan against the specific plan's governing documents to ensure compliance.[33] It adds that by submitting only *her* loan contract, Haley failed to supply the district court with necessary proof that the various plans in the purported class were sufficiently similar. TIAA also relies on regulations that define "reasonableness" in light of rates that would be offered by "local banks" and financial institutions in the community, as well as current economic conditions, to argue that reasonableness is necessarily a fact- and plan-specific inquiry.[34] Haley counters that the same

---

[31] Special App'x 22.

[32] 29 U.S.C. § 1108(b)(1).

[33] *See* 29 C.F.R. § 2550.408b-1(d).

[34] 29 C.F.R. § 2550.408b-1(e).

regulations provide that a "loan program containing a precondition designed to benefit a party in interest (other than the participant) is not afforded relief by section 408(b)(1)."[35] According to Haley, even assuming the interest rate charged on each loan in the class is reasonable, requiring borrowers to invest their collateral in a TIAA Traditional Annuity is a disqualifying "precondition."

That certain of the exemption-related issues may overlap with the merits of this case does not absolve a district court from addressing them at the certification stage when such determinations bear on assessing a Rule 23 requirement.[36] The court must still find that each of the requirements is satisfied in order to certify a class. We recognize, however, that the "determination as to a Rule 23 requirement is not binding on the trier of fact in its determination of the merits."[37]

Because the district court did not analyze the exemptions, it also did not engage with the evidence that TIAA submitted to substantiate the purported variations among the plans. A district court cannot simply "take the plaintiff's word that no material differences exist."[38] While it may be true, as the district court surmised, that the loans had the "same basic central . . . structure," it made no findings about the interest rates that TIAA credited on the collateral, the interest rates that participants paid, and whether those rates varied across loans to support its conclusion that the class

---

[35] 29 C.F.R. § 2550.408b-1(a)(3)(i).

[36] *Wal-Mart Corp. v. Dukes*, 564 U.S. 338, 351–52 & n.6 (2011); *In re I.P.O. Sec. Litig.*, 471 F.3d at 41.

[37] *Johnson*, 780 F.3d at 138.

[38] *Langan*, 897 F.3d at 97.

members were adversely affected in the same way.[39]  We have instructed that a district court must "assess all of the relevant evidence admitted at the class certification stage."[40]  The district court did not do that here and, in the process, impaired our appellate review.

On this basis, we cannot say the district court took the requisite "close look at whether the common legal questions predominate over individual ones."[41]  We are thus constrained to find that the district court's determination on predominance was not "within the range of permissible decisions,"[42] and therefore remand is required.[43]

---

[39] Special App'x 9–10.

[40] *In re I.P.O. Sec. Litig.*, 471 F.3d at 42.

[41] *Langan*, 897 F.3d at 97 (internal citation and quotation marks omitted).

[42] *Myers*, 624 F.3d at 548.

[43] We are mindful that district courts have various "management tools" at their disposal, including bifurcating classwide issues from individual issues, and identifying subclasses of "more homogenous groups defined by common legal or factual questions." *In re Petrobras Sec.*, 862 F.3d at 274; *see* Fed. R. Civ. P. 23(c)(4), (5).  We reiterate in the interest of thoroughness that, if the district court were to rely on subclasses on remand, then it would need to (as any district court must) not only identify those subclasses but also explain their necessity and show that proceeding in that manner comports with Rule 23(b)(3)'s requirements.  *See Langan*, 897 F.3d at 98.  We express no opinion as to whether any of the tools we have identified here may be appropriate to this case and leave that determination to the district court in the first instance.

## CONCLUSION

In sum, we VACATE the district court's decision and REMAND for further proceedings consistent with this opinion.